Tenny HASSAN, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 96–1311.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 23, 1997.

Decided April 1, 1997.

Royal F. Berg, Chicago, IL, argued for Petitoiner.

Carl H. McIntyre, Jr., Department of Justice, Office of Immigration Litigation, Washington, DC, Samuel Der–Yeghiayan, Immigration & Naturalization Service, Chicago, IL, Richard M. Evans, Quynh Vu (argued), David M. McConnell, Stephen W. Funk, and Michelle Gluck, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before BAUER, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

We must decide whether the Board of Immigration Appeals ("BIA") abused its discretion or violated Tenny Hassan's due process rights by refusing to continue his deportation proceedings so that his wife could appeal the denial of an immediate relative visa petition filed on his behalf. Because we find that the BIA did not abuse its broad discretion in refusing to grant the continuance, we affirm its decision dismissing Mr. Hassan's deportation appeal and deny the petition for review.

## I. HISTORY

Tenny Hassan is a native and citizen of Nigeria who was last admitted into the United States as a nonimmigrant visitor for business on September 11, 1987. Hassan's authorization to remain in this country expired one month later on October 11. On February 2, 1994, the Immigration and Naturalization Service ("INS") commenced deportation proceedings against Hassan, charging him with remaining in the United States longer than permitted. Hassan concedes deportability because he overstayed his visa, but he applied for a suspension of deportation.

Hassan believes that he is entitled to a suspension of deportation based on an immediate relative visa petition (an I–130) that his wife filed on his behalf in June 1993. An I–130 visa petition is a prerequisite to an alien's application for permanent residence based on marriage to a United States citizen. Hassan married his wife LaVerne—a United States citizen by birth—on April 26, 1991; the couple previously gave birth to a child on January 29, 1991. Although Hassan's wife continued to support the visa petition, the INS District Director denied the petition[1] and began the deportation proceedings on February 2, 1994. Hassan's wife filed a timely appeal from the District Director's decision on February 18, 1994, and this appeal is apparently still pending.

The deportation proceedings that began on February 2, 1994 lingered over the next year, and on April 14, 1995 the IJ decided that Hassan was deportable because Hassan had overstayed his visa as a nonimmigrant visitor for business. Moreover, the IJ also determined that as a matter of law Hassan was not eligible for suspension of deportation or voluntary departure because Hassan could not establish that he had been a person of good moral character during his stay in the United States. The IJ reached this conclusion after finding that Hassan's prior conviction for deceptive practices constituted a crime of moral turpitude.[2] Finally, the IJ stated that he had no jurisdiction to review the denial of the I–130; instead, the IJ treat-

---

1. In making his decision, the District Director determined that LaVerne Hassan failed to meet her burden of demonstrating that she and her husband intended to remain together at the time of their marriage. In particular, the Director listed several examples contradicting LaVerne Hassan's sworn testimony that she and her husband had never been separated: she received benefits from the Department of Public Aid as a single mother from September 1990 until December 1993; she failed to acknowledge that she was married to her husband (*i.e.*, she identified herself by her maiden name and referred to her husband as her boyfriend) in a criminal complaint she filed against him for assault in November

ber of 1991; she provided the INS with an altered copy of her apartment lease—one that included her name and her child's name although those names did not appear on the original lease; and she failed to reside in that apartment since sometime in 1991 according to the apartment owner.

2. On September 9, 1991, Hassan pled guilty to the crime of deceptive practices, a felony, in Lake County, Illinois. This conviction apparently involved Hassan's use of an alias (Simon Smylte) with the intent to defraud and obtain control over another person's property.

ed Hassan's requests and comments regarding the treatment of the I–130 as a request for a continuance, which the IJ subsequently denied. The IJ, however, added that Hassan could ask to have his deportation case reopened if an appeal of the immediate relative visa petition were granted.

Hassan appealed the IJ's decision, claiming that it "was an abuse of discretion for the Judge to refuse to continue this matter, when the facts clearly show that the I–130" was approvable. The BIA subsequently dismissed Hassan's deportation appeal finding that the IJ properly refused to grant Hassan's motion for a continuance.

## II. ANALYSIS

■ The primary issue we must decide is whether the BIA abused its discretion in denying Hassan's request to continue his deportation proceedings. "The granting of a continuance is within the sound discretion of the IJ and is reviewed for clear abuse." *Castaneda–Suarez v. INS,* 993 F.2d 142, 146 (7th Cir.1993) (citing *Castaneda–Delgado v. INS,* 525 F.2d 1295, 1300 (7th Cir.1975)). Thus, we will uphold the BIA's decision "unless it was made without a rational explanation, it inexplicably departed from established policies, or it rested on an impermissible basis, *e.g.,* invidious discrimination against a particular race or group." *Id.* (quoting *Cordoba–Chaves v. INS,* 946 F.2d 1244, 1246 (7th Cir.1991)).

■ An IJ may grant a motion for continuation in a deportation proceeding upon an alien's showing of "good cause." 8 C.F.R. § 3.29; *see also* 8 C.F.R. § 242.13 (empowering an IJ to grant "a reasonable adjournment" after the commencement of a hearing for "good cause shown"). Significantly, an alien is generally entitled to the favorable exercise of an IJ's discretion regarding a request for a continuance where the District Director has not yet adjudicated a prima facie approvable visa petition and adjustment of status application. *In re Matter of Garcia,* 16 I & N Dec. 653, 656–57 (BIA 1978).

The BIA's decision in *Garcia,* however, did not "establish an inflexible rule" that would require an IJ to continue a deportation proceeding in all cases pending a District Director's final adjudication of a visa petition. *Id.* at 657. In that regard, the BIA added that

[i]t clearly would not be an abuse of discretion for the immigration judge to summarily deny a request for a continuance or a motion to reopen upon his determination that the visa petition is frivolous or that the adjustment application would be denied on statutory grounds or in the exercise of discretion notwithstanding the approval of the petition.

*Id.*

In this case, Hassan has not shown that the IJ or the BIA abused its discretion in refusing to continue his deportation proceedings. The District Director denied Hassan's immediate relative visa petition *before* the IJ commenced Hassan's deportation proceedings. Hassan is not entitled to the IJ's favorable discretion because *Garcia* applies only to prima facie approvable visa petitions *pending final adjudication* by the District Director. *Id.* at 657. Moreover, in light of *Garcia's* express refusal to create a rule requiring the grant of a continuance pending adjudication of a visa petition by the District Director, *see id.,* the IJ plainly had the discretion to deny Hassan's motion for a continuance, especially considering that Hassan's motion came *after* the District Director denied the visa petition. As such, the BIA's decision affirming the IJ was neither irrational nor in conflict with established procedure.[3]

Furthermore, we agree with the BIA that Hassan's deportation proceedings did not merit a continuance because neither the immediate relative visa petition nor the related adjustment of status application were prima facie approvable. The District Director denied the visa petition after considering both supporting and opposing evidence. Because the District Director had already denied the visa petition, that petition could not have

---

**3.** We additionally find no merit in Hassan's baseless argument that the IJ and the BIA discrimi-

nated against him on the basis of his race.

been prima facie approvable. In that regard, we agree with the BIA in finding irrelevant the statements from Hassan's lawyer that the Director's decision was clearly in error and that he could not imagine a situation where an alien married to a United States citizen and having a United States citizen child could be denied an immediate relative visa petition.

■ Hassan's adjustment of status application was also not prima facie approvable. An alien can attempt to adjust his status from a nonimmigrant to that of a person admitted for permanent residence if the alien applies for the adjustment, "the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence," and the alien has an immigrant visa "immediately available to him." 8 U.S.C. § 1255(a). Hassan cannot satisfy these requirements. First, Hassan did not have a visa immediately available to him because the District Director had already denied the immediate relative visa petition prior to Hassan's application for an adjustment of status. Second, Hassan's felony conviction for deceptive practices—a crime involving moral turpitude within the meaning of section 212(a)(2) of the Immigration and Nationality Act of 1952, as amended ("the Act"), 8 U.S.C. § 1182(a)(2) [4]—prevents his admissibility to the United States for permanent residence.[5]

■ Next, we must address Hassan's due process arguments, which we review *de novo*. *Cf. Dielmann v. INS*, 34 F.3d 851, 853 (9th Cir.1994) (reviewing *de novo* whether the BIA's refusal to reopen a deportation pro-

ceeding violated petitioner's due process rights). Hassan's "due process claim is quite vague, and might be resolved against him on that ground alone." *Id.* Moreover, "[t]here is no apparent lack of due process because Petitioner had the benefit of a full hearing, against which he lodges no complaints." *Id.* However, we will briefly entertain Hassan's claim that the BIA violated his right to due process by improperly refusing to continue his deportation proceedings while "knowing a validly filed appeal of the visa petition was being withheld from [the BIA] by [the INS]."

At the time of oral argument, it had been nearly two years since the District Director denied the immediate relative visa petition, and apparently the notice of appeal from that decision was considerably delayed before being sent to the BIA. Perhaps one could attribute this delay to the weighty administrative burden on the INS. This rationalization and Hassan's ability to reopen his deportation proceedings upon a successful appeal of the visa petition, however, provide little consolation to Hassan because he will likely be deported before the BIA considers his wife's visa petition appeal.

Nonetheless, Hassan received due process. Both the IJ and the BIA properly followed the applicable precedent (including *Garcia*) and procedures in refusing to grant the continuance. *Cf. Dielmann*, 34 F.3d at 853–54 (rejecting alien's due process argument because there was no deficiency with the BIA's policy of deferring to the delegated authority of the District Director to adjudicate immediate relative preference petitions and adjustment of status applications). Moreover, given the fact that the District Director in-

---

4. In pertinent part, this section of the Act states that "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of ... a crime involving moral turpitude," 8 U.S.C. § 1182(a)(2)(A)(i)(I), is "ineligible to receive" a visa and "shall be excluded from admission into the United States," 8 U.S.C. § 1182(a).

5. We reject Hassan's claim that the BIA could have waived this eligibility requirement for adjustment of status pursuant to section 212(h) of the Act, 8 U.S.C. § 1182(h). The availability of a discretionary waiver does not necessarily bear upon the prima facie approvability of an application for adjustment of status. *See Achacoso-*

*Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir. 1985) ("The power to reopen a case and grant an adjustment of status is a power to dispense mercy. No one is entitled to mercy, and there are no standards by which judges may patrol its exercise."); *see also Palmer v. INS*, 4 F.3d 482, 489–90 (7th Cir.1993) (discussing the discretionary authority of the BIA in adjudicating waivers pursuant to section 212(h) of the Act, 8 U.S.C. § 1182(h)); *cf. Bull v. INS*, 790 F.2d 869, 872 (11th Cir.1986) (finding that the BIA should have granted petitioner's request for continuance— which he made *before the adjudication* of his wife's immediate relative visa petition—because waiver under 8 U.S.C. § 1182(h) could have made him eligible for adjustment of status).

vestigated the bona fides of LaVerne Hassan's visa petition and permitted Tenny and LaVerne Hassan to give testimony in support of that petition, the BIA plainly provided Hassan "a full and fair opportunity to present [his] case to the INS," *Bothyo v. Moyer*, 772 F.2d 353, 358 (7th Cir.1985). In other words, regardless of the delay in the appeal process of LaVerne Hassan's visa petition, the fact that the IJ and the BIA refused to continue the deportation proceedings *after* the District Director's adjudication of the visa petition satisfies the requirements of due process in regard to those deportation proceedings.[6]

In a sense, Hassan's due process argument is similar to that of the petitioner in *Bothyo*, who claimed that the district court violated her right to due process by dismissing her habeas corpus petition prior to her taking an appeal to the BIA. *Id.* As in *Bothyo*, we find that Hassan's

> concept of due process would prohibit the INS from ever attempting to deport an alien pursuant to a valid deportation order if any further administrative relief, such as motions to reopen, were available. This concept of due process would render the INS helpless in its attempt to enforce the immigration laws.

*Id.*

 Finally, we note that we have no jurisdiction to review Hassan's due process claim regarding the INS's alleged failure to forward LaVerne Hassan's immediate relative visa petition appeal to the BIA, or any other claim that Hassan may have raised regarding the District Director's denial of that petition. Pursuant to section 106(a) of the Act, 8 U.S.C. § 1105a(a),[7] we are limited to reviewing "only those determinations made during a [deportation] proceeding."

*Cheng Fan Kwok v. INS*, 392 U.S. 206, 216, 88 S.Ct. 1970, 1976, 20 L.Ed.2d 1037 (1968). A District Director's denial of a visa petition presents a collateral issue outside the BIA's review of deportation orders, *see Conti v. INS*, 780 F.2d 698, 702 (7th Cir.1985), and thus an appeal from that decision similarly falls outside the purview of reviewing courts in deportation proceedings. Because the adjudication of LaVerne Hassan's visa petition is separate and distinct from these deportation proceedings, we cannot reach the merits of Hassan's visa petition claims.

The BIA's decision is hereby Affirmed and the petition for review is Denied.

---

6. We express no opinion regarding whether an IJ or the BIA comports with due process by refusing to continue a deportation proceeding when a District Director has not yet adjudicated a visa petition. This opinion holds only that the BIA does not violate due process by upholding a deportation order even though the appeal of a related visa petition is pending.

7. On September 30, 1996, the President signed into law the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRI- RA"), Pub.L.No. 104–208, 110 Stat. 3009 (1996). The new law amends the Immigration and Nationality Act, repealing section 106(a), 8 U.S.C. § 1105a, and replacing it with another judicial review provision now codified at 8 U.S.C. § 1252. The new judicial review provision, however, does not apply here. *See* IIRIRA §§ 306(c)(1), 309(a) (set out as notes under 8 U.S.C.A. § 1252 and 8 U.S.C.A. § 1101, respectively).