# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-3869

MOHAMMED SUBHAN,

                                 *Petitioner,*

                 *v.*

JOHN D. ASHCROFT, Attorney General
of the United States,

                               *Respondent.*

_____

Petition to Review Order of the Board of Immigration Appeals.
No. A76–774–293
_____

ARGUED AUGUST 3, 2004—DECIDED SEPTEMBER 7, 2004
_____

Before POSNER, ROVNER, and DIANE P. WOOD, *Circuit Judges.*

POSNER, *Circuit Judge.* This challenge to a removal (deportation) order requires us to mesh two immigration statutes. One of them, 8 U.S.C. § 1252(a)(2)(B), captioned "denials of discretionary relief," is a door-closing statute. It provides, so far as bears on this case, that "notwithstanding any other provision of law, no court shall have jurisdiction to review—(i) any judgment regarding the granting of relief under section . . . 1255 of this title, or (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the

Attorney General." The other statute, which happens to be referred to in section 1252(a)(2) (B)(i), quoted above, is 8 U.S.C. § 1255, which in its subsection (i) authorizes a removable alien to adjust his status to that of a permanent legal resident if he is certified to be entitled to be employed in the United States. This subsection, which is section 245(i) of the Immigration and Nationality Act and known as the LIFE Act, sunseted in 2001, but certain aliens, including Mohammed Subhan, a Pakistani who had become removable after his tourist visa expired, were grandfathered. 8 C.F.R. § 245.10(a)(1)(i)(B); *Lasprilla v. Ashcroft*, 365 F.3d 98, 100 (1st Cir. 2004).

Subhan sought to adjust his status under the LIFE Act, and this required him to obtain certificates from both the Illinois and federal departments of labor. At an initial hearing in the removal proceedings, Subhan asked the immigration judge for, and the judge granted him, a six-month continuance to enable him to obtain the necessary certificates. He endeavored—with all due diligence, so far as appears—to obtain them; but the wheels of bureaucracy grind slow, and at the end of the six months he had not succeeded in obtaining them and so he sought and was granted a further six-month continuance. Again through no laxity or other fault on his part, the labor departments did not act on his application within the further six-month period. But when, therefore, he applied for a third continuance, the immigration judge turned him down with no explanation beyond saying that while Subhan "may be able to eventually acquire lawful permanent resident status by virtue of employment," not having done so as yet he was "not eligible for this form of relief at this time."

This was not a *reason* for denying the motion for a third continuance, but merely a statement of the obvious: that the labor departments hadn't yet acted. If the immigration

judge had said that Subhan had dragged his feet or that it was obvious from the nature of his employment skills that he would not be granted the necessary certificates, or that he should have filed his application for adjustment of status before his tourist visa expired, or that he was a danger to the security of the United States, or that he was engaging in criminal activity or otherwise misbehaving, or even that an illegal alien should not be allowed to delay his removal beyond a year, the denial of the third continuance would have been reasoned, and we may assume would have been consistent with the adjustment-of-status statute. *Hassan v. INS*, 110 F.3d 490, 492-93 (7th Cir. 1997); *Onyeme v. INS*, 146 F.3d 227, 233 (4th Cir. 1998); *Castaneda-Suarez v. INS*, 993 F.2d 142, 146 (7th Cir. 1993); *Al Khouri v. Ashcroft*, 362 F.3d 461, 464 (8th Cir. 2004). But to deny the request for a continuance with no stated reason was, Subhan argues, inconsistent with that statute.

The government responds that the door-closing statute that we quoted at the outset of this opinion prevents us from addressing the merits of Subhan's complaint about the arbitrariness of the immigration judge's denial of a continuance. We quoted two subsections of the door-closing statute. The first precludes judicial review of "any judgment regarding the granting of relief under section . . . 1255." We take this to mean a judgment denying a request for adjustment of status, *Iddir v. INS*, 301 F.3d 492, 497 (7th Cir. 2002); *Medina-Morales v. Ashcroft*, 371 F.3d 520, 528-29 (9th Cir. 2004); *Prado v. Reno*, 198 F.3d 286, 290 (1st Cir. 1999); cf. *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 215-17 (5th Cir. 2003); *Mendez-Moranchel v. Ashcroft*, 338 F.3d 176, 177-78 (3d Cir. 2003); *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1140-44 (9th Cir. 2002), and, so interpreted, the statute is inapplicable to Subhan's case. His request for adjustment of status has not been denied; and while the effect of the immigration judge's refusal to grant a continuance, and the order of

removal that ensued, is the same as that of a denial, the purpose behind the door-closing provision is presumably to shield from judicial review judgments regarding the propriety of adjusting an alien's status, and no such judgment has ever been made with regard to Subhan. See *Prado v. Reno, supra*, 198 F.3d at 291-92; *Medina-Morales v. Ashcroft, supra*, 371 F.3d at 527. When a request for an adjustment of status is denied there is no judicial review because the denial is one of the discretionary orders expressly made nonreviewable by section 1252(a)(2)(B). But no discretion was exercised here to deny a requested adjustment of status; instead, the denial of the continuance prevented the alien from obtaining action on his request.

The second subsection of the door-closing statute, we recall, denies judicial review of "any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General." There are two ways to take this. One, suggested by our decision in *Pilch v. Ashcroft*, 353 F.3d 585, 587 (7th Cir. 2003), is that the reference is to final decisions: "The thing under review is the agency's final decision, not the language of its opinion; and if the decision is to withhold certain discretionary remedies, that's the end." 8 U.S.C. § 1252(a)(1) limits judicial review of immigration orders to final decisions, which in this case is the order removing Subhan. As that is not a discretionary decision, see 8 U.S.C. § 1229a(e)(2)(A); *Olowo v. Ashcroft*, 368 F.3d 692, 699 (7th Cir. 2004); *Nakamoto v. Ashcroft*, 363 F.3d 874, 880-81 (9th Cir. 2004), review is not precluded.

A second possibility, however, one not foreclosed by *Pilch*, which refers to "the language" of the agency's decision rather than to interim rulings, is that "any other decision or action" includes interim orders, and if the interim order in question is discretionary then we cannot review it. It is

routine for appellate courts to review interim rulings by trial courts, including denials of continuances, in appeals from final decisions. *United States v. Pearson*, 340 F.3d 459, 467-68 (7th Cir. 2003); *LeBlang Motors v. Subaru of America, Inc.*, 148 F.3d 680, 689 (7th Cir. 1998). It is likewise routine for courts reviewing final decisions of deportation or removal to review denials of continuances in the proceedings leading up to that decision. *Castaneda-Suarez v. INS*, 993 F.2d 142, 146 (7th Cir. 1993); *Oluyemi v. INS*, 902 F.2d 1032, 1033-34 (1st Cir. 1990). And since orders denying motions for continuances, like other orders governing the management of trials, are traditionally and indeed inevitably discretionary in character. *Hassan v. INS, supra*, 110 F.3d at 492; *Ponce-Leiva v. Ashcroft*, 331 F.3d 369, 377 (3d Cir. 2003); *Onyeme v. INS, supra*, 146 F.3d at 231; *Baires v. INS*, 856 F.2d 89, 91 (9th Cir. 1988), it is apparent that section 1252(a)(2) (B)(ii) withdraws from the courts the power to review such rulings when made by an immigration judge. *Yerkovich v. Ashcroft*, No. 02-9562, 2004 WL 1859928 (10th Cir. Aug. 20, 2004); *Onyinkwa v. Ashcroft*, No. 03-2160, 2004 WL 1574514, at *2 (8th Cir. July 15, 2004); cf. *Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 819 (9th Cir. 2004); *Castellano-Chacon v. INS*, 341 F.3d 533, 544 (6th Cir. 2003). One "action" that the Attorney General is authorized to take in immigration matters is to conduct removal proceedings, § 1229a(a)(2), which implies acting on requests for continuances; and so we are not surprised that an implementing regulation provides that "an immigration judge may grant a continuance for good cause shown." 8 C.F.R. § 1002.39.

Supposing, therefore, though without having to decide, that section 1252(a)(2)(B)(ii) *generally* bars judicial review of a continuance granted by an immigration judge in a removal proceeding, we nevertheless think it unlikely that Congress, intending, as it clearly did, to entitle illegal aliens to seek an adjustment of status upon the receipt of certifi-

cates from the state and federal labor departments, at the same time also intended section 1252(a)(2)(B)(ii) to place beyond judicial review decisions by the immigration authorities that nullified the statute. If that section is applicable to cases such as this—cases, that is, in which rulings on requests for adjustment of status are precluded by procedural rulings—immigration judges can with impunity refuse to grant one-week continuances to persons in Subhan's position. And that would sound the death knell for the request, since unlike most grounds for adjustment of status, adjustments based on employment, like those based on marriage to a U.S. citizen, cannot be pursued once the alien has been removed from the United States. 8 U.S.C. § 1255(i); *Padilla v. Ashcroft*, 334 F.3d 921, 925 (9th Cir. 2003); *Valderrama v. INS*, 260 F.3d 1083, 1089 n. 7 (9th Cir. 2001).

We conclude that the immigration judge, seconded by the Board of Immigration Appeals, which affirmed him without discussing his denial of the continuance, violated section 1255(i) when he denied Subhan a continuance without giving a reason consistent with the statute (indeed without giving any reason). So the order of removal cannot stand and there is no need for us to consider Subhan's alternative ground—that the denial of the third request for a continuance was arbitrary and therefore a denial of due process (the government concedes that the door-closing statute is inapplicable to orders that violate the Constitution, *Robledo-Gonzales v. Ashcroft*, 342 F.3d 667, 679 (7th Cir. 2003); *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001); *Mendes v. INS*, 197 F.3d 6, 11 (1st Cir. 1999))—beyond noting our reluctance to emasculate the door-closing statute by equating arbitrary rulings to denials of due process. *Dave v. Ashcroft*, 363 F.3d 649, 652-53 (7th Cir. 2004); *Gonzalez-Oropeza v. U.S. Attorney General*, 321 F.3d 1331, 1333 (11th Cir. 2003).

The petition for review is granted and the case returned to the immigration authorities for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*