

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-12-2005

# Patel v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4412

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Patel v. Atty Gen USA" (2005). *2005 Decisions.* Paper 706.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/706

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No. 03-4412

MINESH H. PATEL,

Petitioner

V.

*ALBERTO R. GONZALES, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA,

Respondent

*Pursuant to F.R.A.P. 43(c)

_____

On petition for review of a final order
of the Board of Immigration Appeals
File No. A75-774-184

_____

Submitted Pursuant to LAR 34.1(a)
November 19, 2004

_____

Before: ROTH and SMITH, *Circuit Judges*,
and DEBEVOISE,* *District Judge*

(Filed: August 12, 2005)

_____

OPINION OF THE COURT

_____

_____

*The Honorable Dickinson R. Debevoise, Senior United States District Judge for the
District of New Jersey, sitting by designation.

SMITH, *Circuit Judge.*

Minesh Hasmukh Patel is a native and citizen of Great Britain who received three continuances from an immigration judge during deportation proceedings, and petitions for review of the IJ's denial of a fourth continuance. We do not reach the merits of Patel's claim that the IJ abused his discretion in denying the fourth continuance because we conclude that we lack jurisdiction to review an IJ's denial of a continuance in a removal proceeding.

**I.**

Patel was admitted to the United States as a non-immigrant visitor for pleasure in 1982. He overstayed his six-month visa, and on that basis the INS filed a Notice to Appear in 1999. In May 2000, at his first deportation hearing, Patel admitted to staying in the United States longer than permitted, effectively conceding deportability. The IJ noted that Patel had no qualifying relatives to support an application for cancellation of removal, but, noting that Patel had been in the United States for many years, offered Patel's counsel roughly five months to determine whether relief besides voluntary departure was available.

In early October 2000, two weeks before Patel's next scheduled hearing with the IJ, the INS informed Patel's mother that she had established her claim for membership in

a class of aliens who attempted to file a legalization application between May 1987 and May 1988 but whose applications were refused. A statute enacted in December 2000, the Legal Immigration and Family Equity Act (LIFE Act), allowed certain members of the class to adjust their status during a twelve-month period to begin after regulations were issued. The statute also offered protection for qualifying spouses and unmarried children of class action claimants. Patel's mother, and Patel in derivative fashion, sought to adjust their status under the LIFE Act.

In mid-October 2000, Patel appeared for his second deportation hearing. Patel's lawyer was absent. The IJ explained that the lawyer was in New York, and noted that "there really has been nothing done by the attorney to try to help this young man solve his problems." The IJ encouraged Patel's father, whom the IJ had "called in," to get Patel an immigration lawyer in Pittsburgh because "the responsibility is the father and the mother [sic] to get legal status and then maybe respondent could derive something through it." Patel's father had explained that Patel's mother was "trying to get status through LULAC [i.e., the class claim for aliens discussed above], but it hasn't happened yet." The IJ postponed Patel's case until April 2001, but warned him that if nothing was happening with his case he might be ordered deported, "[n]ot in April, but probably sometime thereafter."

At the scheduled April 2001 hearing, Patel's attorney told the IJ that "there have been some changes in the law" governing the LULAC class claim that might enable Patel

to adjust his status. On that basis, the IJ continued Patel's case until October 16, 2001.

Two months later, in June 2001, the INS published the regulation promised in the December 2001 press release establishing procedures under the LIFE Act for certain class members to become lawful permanent residents in the United States. The regulation provided for a stay of removal and work authorization for certain spouses and unmarried children of aliens eligible to adjust status under the statute.

In August 2001, the Patel family filed an application for legalization under the LIFE Act. A substantial portion of their application is in the record, including a form entitled "Application for Employment Authorization," which related to Patel's work authorization as an unmarried child of an alien under the LIFE Act.

In October 2001, Patel appeared as scheduled before the IJ. "We were waiting to see if the respondent would be in a position to adjust his status with his mother, who was seeking to adjust her status through LULAC," the IJ began. He noted that Patel's attorney said the adjustment had not yet been accomplished, but "there has been an effort made to have the respondent apply in that regard." However, the IJ determined that he would order Patel voluntarily to depart, for two reasons. First, he noted that after three continuances, Patel's removal proceedings had lasted for two years, "and we haven't even gotten an initial order from the Immigration Court. I don't think that's appropriate." Second, the IJ reasoned that the delay in Patel's case effectively denied the INS the right to prosecute its case. He added:

There's an advantage to you and to your client by doing it this way, because you're not going to have to come back here for any more hearings. If you appeal it to the Board of Immigration Appeals, claiming that I erred by not giving you further time, the case will be there for at least a year, maybe longer[,] and, in the meantime, you can try to see if you can qualify him under the plan that you have come up with, but I'm not going to postpone the case any further[;] but by entering this order today, there will be no immediate consequence provided that you appeal.

The IJ's Oral Decision struck a firmer tone. He explained that respondent sought postponement of his case so he could obtain legal status through his mother's membership in the LULAC class. "In accordance with respondent's request," the IJ stated, he had granted three continuances. However, by October 2001 Patel's mother still had not obtained permanent resident status, and therefore Patel's status had not changed. The IJ reasoned that he could not postpone Patel's case again because the BIA had held that an immigration court may not withhold action in removal proceedings on the basis of collateral visa proceedings.[1]

"In fact," the IJ continued, "the respondent is not the beneficiary of the approved visa petition with the current visa number as of the date of this decision. Instead, he has a tenuous claim that he might be able to acquire status if his mother can acquire status through the LULAC program." Having continued Patel's removal for two years, the IJ

---

[1]While the IJ cited *Matter of Li* for this proposition, 13 I. & N. 628 (BIA 1975), this citation appears to be in error. At the volume and page number cited by the IJ for *Matter of Li*, a case entitled *Matter of Zedkova* appears, which involves an application for refugee status under § 203(a)(7) of the INA. 13 I. & N. Dec. 628. There is a *Matter of Li* published at 20 I. & N. 700 (BIA 1993), but that decision appears to answer the question whether "the parent/child relationship between natural parents and child[ren] survive for immigration purposes when a child has been adopted." 20 I. & N. at 703. In short, neither case appears to contain the proposition for which the IJ cited "*Matter of Li*."

concluded, "no further delay in these proceedings is justified under the circumstances." The BIA used its streamlining regulations to affirm the results of the IJ's decision without decision.

Patel claims that the IJ abused his discretion and violated Patel's right to due process in not granting the final continuance.[2] Patel argues that he should not be deported while the government processes his legalization application, particularly as the government, according to Patel, delayed enactment of the LIFE Act and its regulations. The government argues that the IJ did not abuse his discretion or violate Patel's right to due process because Patel's legalization claim was tenuous, and after several continuances Patel had demonstrated no significant progress in establishing his eligibility for relief.

Both parties claim this Court has jurisdiction under 8 U.S.C. § 1252(a)(1), which provides for judicial review of final orders of removal. Parties may not create subject matter jurisdiction by agreement, however, and the question for the Court is whether a later portion of that same subsection precludes the Court's jurisdiction to review denial of a continuance resulting in a final order of deportation.

## II.

The jurisdiction limiting passage in question provides:

---

[2]Patel also attempts, in cursory fashion, to make out an equal protection claim based on his allegation that other aliens received continuances on the day he requested, and was denied, his fourth continuance. As Patel does not develop this argument, which appears entirely to lack merit, we will not discuss it further in this opinion.

> Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B). We thus must determine whether the IJ's decision[3] was a "decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General."

We have explained that IJs are designees of the Attorney General, and are governed by provisions of law regarding the Attorney General. *See Urena-Tavarez v. Ashcroft*, 367 F.3d 154, 158 n.6 (3d Cir. 2004). Hence, the IJ's denial of a continuance in this case constitutes an action of the Attorney General for purposes of § 1252(a)(2)(B). Accordingly, the question becomes whether the authority for that action was "specified under" the subchapter cited in § 1252(a)(2)(B) to be in the discretion of the Attorney General. If so, we lack jurisdiction to review that action.

"The language 'this subchapter' in the foregoing provision refers to Subchapter II in Chapter 12 of Title 8 of the United States Code . . . ." *Id*. at 158. Subchapter II of the United States Code includes sections 1151-1378 of Title 8. Further,

> [i]mmigration judges derive the discretionary authority to grant or deny motions for continuance from 8 U.S.C. § 1229a(a)(1) (2004), and this provision is contained within subchapter 2. This section authorizes immigration judges to "conduct removal proceedings," 8 U.S.C. § 1229(a)(a)(1), and an implementing

---

[3]We are formally petitioned to review the BIA's final order of removal, which was based on its decision to defer to the IJ. In turn, we "review the IJ's decision to assess whether the BIA's decision to defer was appropriate." *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n.2 (3d Cir. 2001).

7

regulation provides that "an immigration judge may grant a continuance for good cause shown."  8 C.F.R. § 1003.29 (2004).

*Oyinkwa v. Ashcroft*, 376 F.3d 797, 799 (8th Cir. 2004).  *See also Subhan v. Ashcroft*, 383 F.3d 591, 595 (7th Cir. 2004) ("One 'action' that the Attorney General is authorized to take in immigration matters is to conduct removal proceedings . . , which implies acting on requests for continuances; and so we are not surprised that an implementing regulation provides that 'an immigration judge may grant a continuance for good cause shown'"); *Yerkovich v. Ashcroft*, 381 F.3d 990, 993 (10th Cir. 2004) ("Although the statutes themselves do not specifically confer discretion on the Attorney General to grant or deny a continuance, the regulations clearly confer such discretion on the IJ.").

We have noted that

> [t]he scope of § 1252(a)(2)(B) has been the subject of some disagreement among the courts of appeals.  Section 1252 is captioned "Judicial review of orders of removal."  The courts have had to decide whether the provision strips courts of appeal from reviewing all discretionary decisions or only those made in the context of removal proceedings.

*Urena-Tavarez*, 367 F.3d at 159.  We need not reach that issue today, however, because the IJ's finding that Patel was ineligible for a continuance resulted in a final order of removal.  *Id*.  Because the IJ's discretionary decision was authorized by a regulation implementing 8 U.S.C. § 1229a(a)(1) (2004), which is contained in subchapter II of Chapter 12 of Title 8, we hold that § 1252(a)(2)(B) precludes our review of the IJ's denial

of Patel's request for a fourth continuance.[4]

Finally, we note that Patel claims the IJ's denial of a fourth continuance violated his due process rights, and we acknowledge that several circuits have "suggested that courts retain jurisdiction to review discretionary decisions by immigration judges if a petitioner has demonstrated a substantial constitutional violation." *See Oyinkwa*, 376 F.3d at 799 n.1 (citing, inter alia, *Morales Ventura v. Ashcroft*, 348 F.3d 1259, 1262 (10th Cir. 2003)); *Carranza v. INS*, 277 F.3d 65, 73 (1st Cir. 2002); *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001)). Even if we were to adopt this position, however, Patel's due process claim seems nothing more than his merits argument – that the IJ abused his discretion in denying Patel's motion for a fourth continuance – refashioned in constitutional terms. As such, we decline to "emasculate the door-closing statute by equating [an allegedly] arbitrary ruling[] to [a] denial[] of due process." *Subhan*, 383 F.3d at 595. *See also Oyinkwa*, 376 F.3d at 799 n.1 (stating that "a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb") (citation omitted).

## III.

---

[4]This decision accords with the holdings by two of our sister circuits. *See Yerkovich*, 381 F.3d at 995; *Onyinkwa*, 376 F.3d at 799. *But see Subhan*, 383 F.3d at 595 (reviewing merits of denial of continuance after stating that, while § 1252(a)(2)(B) may generally bar review of a continuance granted in a removal proceeding, "we nevertheless think it unlikely that Congress, intending, as it clearly did, to entitle illegal aliens to seek an adjustment of status [under the LIFE Act], at the same time also intended § 1252(a)(2)(B)(ii) to place beyond judicial review decisions by the immigration authorities that nullified the statute.").

For the foregoing reasons, Patel's petition for review will be denied.