United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 11, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-60022

Summary Calendar

_____

NIZAR ALI

                Petitioner

        v.

ALBERTO R GONZALES, U S ATTORNEY GENERAL

                Respondent

_____

Petition for Review of an Order of the
Board of Immigration Appeals
No. A78 999 734

_____

Before KING, Chief Judge, and WIENER and DEMOSS, Circuit Judges.

PER CURIAM:[*]

        Petitioner Nizar Ali ("Ali") petitions the court for review

of a final order of removal by the Board of Immigration Appeals

("BIA").  The BIA summarily affirmed, without opinion, the

decision of the Immigration Judge ("IJ") to deny Ali's motion for

a continuance pending the outcome of his labor certification with

_____

        [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

-1-

the United States Department of Labor ("DOL").  Ali now asserts

that this denial impaired his ability to apply for adjustment of

status under section 245(i) of the Immigration and Nationality

Act ("INA").  See 8 U.S.C. § 1255(i) (2000).  For the following

reasons, we DENY the petition for review.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Ali, a 51-year-old native and citizen of Pakistan, was

admitted on a temporary non-immigrant visa to the United States

on June 14, 2001, with authorization to remain in the United

States no later than June 13, 2002.[1]  In direct violation of the

terms of his temporary visa, Ali remained in the United States

beyond this deadline without authorization from the Immigration

and Naturalization Service ("INS").[2]  On February 3, 2003, the

INS issued a Notice to Appear ("NTA"), charging Ali as a

removable alien under § 237(a)(1)(B) of the INA.  8 U.S.C. §

1227(a)(1)(B) ("Any alien . . . whose nonimmigrant visa (or other

---

[1]  Ali's initial visa permitted him to remain in the United States for a six-month period ending December 13, 2001. On February 7, 2002, Ali applied for and received an extension for an additional six months until June 13, 2002.

[2]  As of March 1, 2003, the INS's administrative, service, and enforcement functions were transferred from the Department of Justice to the new Department of Homeland Security.  See Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (2002).  The Bureau of Immigration and Customs Enforcement in the Department of Homeland Security assumed the INS's detention, removal, enforcement, and investigative functions.  See Peters v. Ashcroft, 383 F.3d 302, 304 n.1 (5th Cir. 2004).  Because the events in this case began before the reorganization, we will continue to refer to the INS in this opinion to avoid confusion.

documentation authorizing admission into the United States as a nonimmigrant) has been revoked under section 1201(i) of this title, is deportable.").

On August 25, 2003, at his initial hearing before the IJ, Ali admitted to service of the NTA and conceded removability based on the factual allegations contained in the NTA. At this time, Ali requested asylum relief or, in the alternative, a withholding of removal. Ali also informed the IJ that if the court denied his claims for relief, he would request voluntary departure. In order to afford Ali the opportunity to file his application for asylum, including all necessary supporting documents and a witness list, the IJ instructed that the case would resume on October 10, 2003. Before adjourning, the IJ specifically warned Ali that the court would deem his grounds for relief abandoned if he failed to timely file his application for asylum or withholding of removal before the hearing on October 10, 2003.

When the hearing resumed on October 10, 2003, Ali's counsel informed the IJ that he had decided not to file an application for asylum or withholding of removal on behalf of his client.[3] In accordance with his previous warning, the IJ deemed Ali to

---

[3]    When questioned directly by the IJ, Ali indicated that he still wished to apply for asylum and withholding of removal and that he believed his counsel was to have prepared these applications. Because Ali did not raise a claim of ineffective assistance of counsel to the BIA or this court, we decline to speculate as to the underlying reasons for this discrepancy.

-3-

have abandoned his application for asylum and withholding of removal. In place of the abandoned asylum argument, Ali presented two motions to the court. First, he submitted a motion to dismiss the original NTA because the government official who signed the document was allegedly no longer authorized to issue a charging document after the functions of the INS were replaced by the Department of Homeland Security in March 2003. The IJ rejected this argument as wholly devoid of merit, and Ali does not challenge this determination in his petition for review.

Second, Ali moved for a continuance pending the outcome of his application for labor certification. He argues that because his labor certification request was filed on January 30, 2002 and was currently under review with the DOL, the IJ should have granted a continuance to allow Ali the opportunity to apply for adjustment of status under § 1255(i). The IJ also rejected this argument, finding that (1) Ali had not established eligibility under the provisions of § 1255(i); and (2) Ali had failed to demonstrate good cause to prolong the case indefinitely pending the DOL's determination with respect to his labor certification application. Despite denying both motions, the IJ granted Ali's request for voluntary departure and issued an alternative order of removal to Pakistan in the event Ali failed to abide by the prescribed terms of his voluntary departure.

Ali timely appealed the decision of the IJ to the BIA on November 10, 2003. On December 17, 2004, the BIA granted summary

-4-

affirmance of the IJ's opinion pursuant to 8 C.F.R. § 1003.1(e)(4). Ali filed a timely petition for review of the BIA's determination with this court on January 11, 2005, challenging the IJ's denial of his motion for a continuance with respect to his pending labor certification. He also raises equal protection and due process claims under the Fifth Amendment with respect to the IJ's denial of his motion for a continuance.

## II.  DISCUSSION

### A.  Standard of Review

This court's review is typically limited to the final order of the BIA. <u>Chun v. INS</u>, 40 F.3d 76, 78 (5th Cir. 1994). Where the BIA expressly adopts the opinion of the IJ without further opinion, however, this court reviews the IJ's decision. <u>Mikhael v. INS</u>, 115 F.3d 299, 302 (5th Cir. 1997). Because the summary affirmance procedures outlined in 8 C.F.R. § 1003.1(e)(4) expressly forbid further explanation or reasoning, the underlying decision is the proper subject of judicial review. <u>Garcia-Melendez v. Ashcroft</u>, 351 F.3d 657, 660 (5th Cir. 2003); <u>see also</u> <u>Soadjede v. Ashcroft</u>, 324 F.3d 830, 831-32 (5th Cir. 2003).

The grant or denial of a continuance is a matter reserved to the sound discretion of the IJ and reviewed only for abuse of discretion.[4] <u>Witter v. INS</u>, 113 F.3d 549, 555-56 (5th Cir.

_____

[4]  Although neither party contests our jurisdiction to review the denial of a continuance, we note that any argument to the contrary is foreclosed by our recent decisions in <u>Zhao v.</u>

1997); see also 8 C.F.R. § 1003.29 ("The Immigration Judge may grant a motion for continuance for good cause shown."). Claims of constitutional violations, including equal protection and due process under the Fifth Amendment, are reviewed de novo. See DeZavala v. Ashcroft, 385 F.3d 879, 883 (5th Cir. 2004); Ogbemudia v. INS, 988 F.2d 595, 598 (5th Cir. 1993).

**B.   Analysis**

Ali contends that the BIA's summary affirmance of the IJ's denial of his motion for a continuance was an abuse of discretion because Ali had a pending application for labor certification filed with the DOL. Relying exclusively on language from the Seventh Circuit's opinion in Subhan v. Ashcroft, 383 F.3d 591 (7th Cir. 2004), Ali argues that the denial of a continuance on his pending labor certification prematurely cut short his application for adjustment of status under § 1255(i).

Even if it were binding precedent on this court, we find Ali's reliance on Subhan to be misplaced. The Legal Immigration Family Equity Act ("LIFE Act") extended the sunset date provided under § 1255(i), during which an alien must submit his labor

---

Gonzales, 404 F.3d 295 (5th Cir. 2005) and Manzano-Garcia v. Gonzales, 413 F.3d 462 (5th Cir. 2005). See Jaradat v. Gonzales, 143 F. App'x 566, 567 (5th Cir. July 18, 2005) (unpublished). Because the discretionary authority to grant or deny a continuance derives from a regulation, rather than the INA statute itself, the jurisdiction-stripping provision under 8 U.S.C. § 1252(a)(2)(B)(ii) does not apply to bar this court's power to review the IJ's determination. See Zhao, 404 F.3d at 303; Manzano-Garcia, 413 F.3d at 466.

certification to the DOL pursuant to an application for adjustment of status, from September 31, 1997 to April 30, 2001. See LIFE Act Amendments of 2000, Pub. L. No. 106-554, § 1502(a)(1)(B), 114 Stat. 2763 (2000)  Although the new sunset date has now lapsed, the implementing regulation provides for a "grandfathered alien," which protects an alien who filed an application for labor certification "pursuant to the regulations of the Secretary of Labor on or before April 30, 2001, and which was approvable when filed."  8 C.F.R. § 1245.10(a)(1)(i)(B).  In Subhan, the Seventh Circuit noted that Subhan himself was "grandfathered" in under the LIFE Act.  Subhan, 383 F.3d at 593. In this case, however, the record demonstrates that the DOL did not receive his labor certification application until January 30, 2002, clearly beyond the date prescribed in the sunset provision of the LIFE Act.

Ali does not address the untimeliness of his labor certification application under the sunset provision of the LIFE Act.  The government, however, notes this fact and argues that the IJ could not have abused his discretion in denying the motion for a continuance if Ali was not eligible under LIFE Act.  We agree that Ali's failure to file the labor certification application before April 30, 2001 controls our resolution of this case.  Although the IJ does not specifically mention the tardiness of Ali's filing with the DOL, he did state that Ali had

failed to establish eligibility under the LIFE Act.  Because

Subhan is clearly distinguishable from the instant matter in this

crucial respect, we find no error with the IJ's denial of Ali's

motion for a continuance and decline to further address the

persuasiveness of the reasoning in Subhan at this time.

In light of his clear statutory ineligibility, Ali's equal

protection and due process claims are without merit.  Ali asserts

that the requirement that he register under the National Security

Entry-Exit Registration System ("NSEERS")[5] triggered the

initiation of his removal proceedings.  Because NSEERS applies

only to aliens from certain designated countries, Ali contends

that the fact that his compliance with the registration program

alerted the INS to his expired visa violated his equal protection

rights under the Fifth Amendment.  Upon de novo review of the

record, we find no such constitutional violation.

It is well-established that the Attorney General has broad

prosecutorial discretion to initiate removal proceedings against

aliens who have violated the immigration laws of the United

States.  See Reno v. American-Arab Anti-Discrimination Comm., 525

U.S. 471, 490 (1999) (noting that "the additional obstacle of

selective-enforcement suits could leave the INS hard pressed to

---

[5]     NSEERS directs the Attorney General to establish
proceedings for tracking foreign nationals from various
countries, including Pakistan, who reside in the United States.
8 U.S.C. §§ 1303, 1305; see also Registration of Certain
Nonimmigrant Aliens from Designated Countries, 67 Fed. Reg.
77,642 (Dec. 18, 2002).

enforce routine status requirements"); <u>Cardoso v. Reno</u>, 216 F.3d 512, 517 (5th Cir. 2000) (stating that Congress has intended "to protect from judicial intervention the Attorney General's long-established discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders") (quoting <u>Alvidres-Reyes v. Reno</u>, 180 F.3d 199, 201 (5th Cir. 1999)). Ali does not challenge the fact that he remained in the United States beyond the expiration period of his temporary visa in violation of § 1227(a)(1)(B). Because the IJ found him removable on those grounds and not pursuant to his registration under NSEERS, we find no violation of Ali's equal protection rights under the Fifth Amendment.[6]

Ali's due process arguments are similarly unpersuasive. He argues that the denial of his motion for a continuance to pursue his application for adjustment of status violated his substantive

------

[6] Moreover, this court recently upheld the nationality-sensitive provisions of the Nicaraguan Adjustment and Central American Relief Act ("NACARA") against a similar equal protection challenge.

> We hold that the equal protection principles that are implicit in the Due Process Clause of the Fifth Amendment do not in any way restrict Congress's power to use nationality or place of origin as criteria for the naturalization of aliens or for their admission to or exclusion or removal from the United States.

<u>Rodriquez-Silva v. INS</u>, 242 F.3d 243, 248 (5th Cir. 2001); <u>see also</u> <u>Zafar v. U.S. Attorney Gen.</u>, 426 F.3d 1330, 1336 (11th Cir. 2005) ("Petitioners' equal protection rights were not violated by being required to be registered in the National Security Entry-Exit Registration System, which they argue precipitated them being placed in these <u>discretionary</u> removal proceedings by the Attorney General, where other non-Pakistani citizens were not so required to register.").

due process rights.  As this circuit has previously found, discretionary relief from removal, including adjustment of status, is not a liberty or property interest requiring due process protections.  See Assaad v. Ashcroft, 378 F.3d 471, 475 (5th Cir. 2004); Mireles-Valdez v. Ashcroft, 349 F.3d 213, 219 (5th Cir. 2003).  Moreover, to sustain a due process challenge to the IJ's denial of his motion for a continuance, Ali must demonstrate "substantial prejudice."  Patel v. INS, 803 F.2d 804, 807 (5th Cir. 1986) (affirming an IJ's decision to deny a continuance where an alien had not challenged the finding of deportability nor established eligibility for discretionary relief from removal).  Because his labor certification application was not submitted to the DOL until after the sunset provision of the LIFE Act had lapsed, Ali has failed to demonstrate how the IJ's denial of his motion for a continuance substantially prejudiced his removal proceedings.

## III.  CONCLUSION

For the foregoing reasons, we DENY the petition for review.