**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1702
_____

DAVID GRIGOLASHVILI,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A078-817-459)
Immigration Judge:  Honorable Charles M. Honeyman
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 3, 2014

Before: RENDELL, SHWARTZ and BARRY, Circuit Judges

(Opinion filed:  November 3, 2014)
_____

OPINION[*]
_____

PER CURIAM

David Grigolashvili, a citizen of Georgia, entered the United States in November

1998 as a nonimmigrant visitor for business.  In 2001, the Government charged him as

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent

removable under 8 U.S.C. § 1227(a)(1)(B) for overstaying his visa. Grigolashvili conceded removability at a hearing before an Immigration Judge ("IJ") in July 2002. Then, the IJ granted the first of many continuances in administrative proceedings that stretched over a decade.[1]

Initially, the IJ continued the proceedings so that Grigolashvili's wife, Valnara Shuleshova, could file a Refugee/Asylee Relative Petition (Form I-730) for follow-to-join benefits for Grigolashvili. Shuleshova, who had won asylum in July 2000, legally wed Grigolashvili in a religious ceremony in September 2000. R. 750. However, sometime after July 2002, R. 81-82, in order to avoid being ineligible for follow-to-join benefits as a spouse acquired after Shuleshova's grant of asylum, Grigolashvili sought a declaratory judgment from the Pennsylvania Court of Common Pleas establishing that he and Shuleshova had established a common law marriage in January 2000. The IJ continued the case while the state action was proceeding. R. 92. In August 2003, the state court declared that Grigolashvili and Shuleshova had entered into a common law marriage in January 2000. R. 749. Meanwhile, in May 2003, Grigolashvili filed applications for asylum, withholding, and relief under the Convention Against Torture ("CAT").

The IJ further continued the case to allow for the adjudication of the I-730 petition. Ultimately, despite the declaratory judgment, the I-730 petition was denied; it was untimely because Shuleshova first filed it in September 2003, more than two years after she had been granted asylum, R. 715. Over the next six years, with the IJ granting

---

[1] Because we write primarily for the parties, who are familiar with the facts, we focus on the salient events and do not describe every procedural turn in the case.

several more continuances, Shuleshova twice again petitioned for follow-to-join benefits for Grigolashvili without success. R. 626-27, 666-67. A motion to reopen and reconsider her third I-730 petition was denied. R. 619-20.

In April 2010, Grigolashvili withdrew his applications for asylum, withholding, and CAT relief. In July 2010, Shuleshova was naturalized as a U.S. citizen. Subsequently, the IJ continued the case while Shuleshova filed a Petition for Alien Relative (Form I-130) on Grigolashvili's behalf; the I-130 was approved in April 2011. R. 429. In September 2011, Grigolashvili filed an Application to Register Permanent Residence or Adjust Status (Form I-485) and an Application for Waiver of Grounds of Inadmissibility (Form I-601). R. 371, 463. Along with his I-601 application, Grigolashvili submitted a brief discussing the immigration consequences of his criminal history, R. 533, including a guilty plea for possession of drug paraphernalia that contained heroin or heroin residue, in violation of 35 Pa. Cons. Stat. § 780-113(a)(32), R. 359-63. Grigolashvili argued, inter alia, that he was eligible for a waiver of inadmissibility under 8 U.S.C. § 1182(h). R. 541.

In February 2012, Grigolashvili, represented by new counsel, informed the IJ that he was seeking post-conviction relief regarding his drug paraphernalia conviction. His state petition was unsuccessful, however, and he did not appeal its May 2012 dismissal. R. 276. In July 2012, Grigolashvili's wife filed another I-730 petition, requesting a humanitarian waiver of the two-year filing deadline. R. 278-84.

At a hearing before the IJ in July 2012, Grigolashvili requested another continuance. He also indicated that he was not reinstating his requests for asylum, withholding, or CAT relief. R. 265. Grigolashvili acknowledged that his paraphernalia conviction rendered him inadmissible without eligibility for a waiver, see Matter of Espinoza, 25 I. & N. Dec. 118, 123-24 (BIA 2009) (determining when an alien who was convicted of a drug paraphernalia offense qualifies for an inadmissibility waiver), but he reserved the right to argue on appeal that the precedent barring him from adjustment of status was incorrect.

The IJ denied Grigolashvili's motion to continue, concluding that he was ineligible for a waiver of inadmissibility under Board of Immigration Appeal ("BIA") precedent and that it was extremely speculative that his fourth I-730 petition would be successful. Consequently, the IJ denied Grigolashvili's I-485 and I-601 applications and ordered him removed to Georgia. R. 33-34.

Grigolashvili took an appeal to the BIA, asserting that the IJ erred in denying a continuance and arguing that Matter of Espinoza, which rendered him ineligible for a waiver of inadmissibility, was based on an error of law because it concluded that possession of drug paraphernalia is an offense related to a controlled substance. R. 12. The BIA ruled that the IJ correctly concluded that good cause did not exist to grant a continuance. The BIA also concluded that Grigolashvili did not dispute that his drug paraphernalia conviction involved heroin and was a conviction for an offense relating to a

4

controlled substance. The BIA declined to revisit Matter of Espinoza and dismissed the appeal.

Grigolashvili presents a petition for review.[2] In short, he argues that the BIA abused its discretion in affirming the IJ's decision to deny the continuance. He further contends that the BIA erred in affirming the IJ's ruling that he was ineligible for a waiver of inadmissibility.

We have jurisdiction pursuant to 8 U.S.C. § 1252. See Khan v. Att'y Gen. of the U.S., 448 F.3d 226, 233 (3d Cir. 2006); Pinho v. Gonzales, 432 F.3d 193, 204 (3d Cir. 2005). Our review of legal questions is plenary. See Valdiviezo-Galdamez v. Att'y Gen. of the U.S., 663 F.3d 582, 590 (3d Cir. 2011) We review the denial of a continuance for abuse of discretion. Ponce-Leiva v. Ashcroft, 331 F.3d 369, 377 (3d Cir. 2003).

Upon review, we conclude that the BIA did not err in affirming the IJ's denial of a final continuance. An IJ "may grant a motion for continuance for good cause shown." 8 C.F.R. § 1003.29. Relevant considerations may include the nature and importance of the evidence presented in support of a continuance and the number of continuances already granted. Baires v. INS, 856 F.2d 89, 92-93 (9th Cir. 1988); see also Simon v. Holder, 654 F.3d 440, 442 (3d Cir. 2011) (discussing factors to consider in deciding whether to grant a continuance when, unlike here, an I-130 petition is pending). The IJ did not abuse

---

[2] He previously sought a stay of removal, which we denied.

his discretion in concluding that Grigolashvili did not show good cause under the circumstances of his case.

First, in this case, the IJ granted multiple continuances over the course of more than a decade. Furthermore, despite the delay in reaching a resolution, the decision to deny a final continuance was not, as Grigolashvili contends, merely in service of a "case completion" goal or judicial efficiency. Hashmi v. Attorney General of the United States, 531 F.3d 256 (3d Cir. 2008), on which Grigolashvili relies, is distinguishable. The IJ also assessed the possibility of Shuleshova's success on her pending I-730 petition and concluded that success was speculative.[3] That conclusion was not arbitrary given that all her previous petitions (as well as a motion for reconsideration of one) had been denied. The very first one was held to be untimely filed more than a decade ago.[4] Another was

---

[3] To the extent that Grigolashvili suggests that the IJ also should have considered his pending I-485, we note that Grigolashvili did not seek a continuance on this basis in the agency. Accordingly, we do not address the matter. See Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003).

[4] While Grigolashvili tries to argue that he should not be penalized for a delay in state court proceedings, his case is not like those in which, through no fault of a petitioner, an agency does not act on application essential to adjustment of status. His argument on this point is not centered on the I-730 that was pending. He complains that for reasons outside his control, the state court did not issue its declaration about his common law marriage until more than two years after the grant of asylum to his wife. However, he did not even seek that declaration before July 2002, R. 81-82, which was already two years after his wife won asylum. Also, the IJ continued the administrative proceedings while that state action was pending. R. 92. Furthermore, to the extent that Grigolashvili is objecting to a delay in the adjudication of the last I-730, the IJ did more than just note that an I-730 was pending; the IJ conducted an individualized analysis of the facts of the case. See Subhan v. Ashcroft, 383 F.3d 591, 593-94 (7th Cir. 2004) (distinguishing a

6

held to be deficient for other reasons.[5]  Although, as Grigolashvili contends, there was a possibility that the time limit for the final I-730 could be tolled for humanitarian reasons, see 8 C.F.R. § 208.21(c), the IJ had reason to conclude, upon consideration of the procedural history, that success was speculative.  Furthermore, we reject Grigolashvili's contention that the BIA "rubber-stamped" the IJ's decision without analysis.  See Sevoian v. Ashcroft, 290 F.3d 166, 178 (3d Cir. 2002) (noting that the BIA "'is not required to write an exegesis on every contention'") (citation omitted).

We also reject Grigolashvili's argument that the IJ misapplied a BIA precedent and the BIA "amplified and continued" the mistake in dismissing his appeal, both without giving his eligibility for a waiver of inadmissibility under 8 U.S.C. § 1182(h) the full analysis it deserved.  First, the IJ and BIA gave the matter sufficient consideration.  See Sevoian, 290 F.3d at 178.  Second, no error regarding his eligibility for a waiver of inadmissibility is apparent.

Grigolashvili concedes that he is inadmissible and cannot adjust his status to lawful permanent residency without a waiver because of his conviction under 35 Pa.

---

case in which an IJ denies a continuance by merely noting that an agency has not acted on an application related to adjustment of status from a case in which an IJ assesses the likelihood of success on the application or other factors relevant to whether a continuance is warranted).

[5] Shuleshova did not submit the original order declaring a common law marriage or evidence of commingling of finances or mutual holdings, so the marriage, despite its length and the two children it has produced, was not considered bona fide.  R. 626-27.

Cons. Stat. § 780-113(a)(32) for possession of drug paraphernalia that contained heroin or heroin residue. The IJ's and BIA's reliance on Matter of Espinoza, in which the BIA held that "a law prohibiting the possession of an item intentionally used for manufacturing, using, testing, or enhancing the effect of a controlled substance necessarily pertains to a controlled substance," 25 I & N. Dec. at 120, was not misplaced. Matter of Espinoza also addressed whether a drug paraphernalia conviction has to be tied to a controlled substance defined in federal law. Id. at 121. However, that discussion is not especially relevant to this case because it is undisputed that Grigolashvili's conviction related to heroin. R. 359; see Rojas v. Att'y Gen. of the U.S., 728 F.3d 203, 220 (3d Cir. 2013) (en banc) ("[T]he controlled-substances conviction that is the basis of removal must involve or relate to a substance 'defined in' federal law. . . . [T]he guilty plea . . . in a Pennsylvania drug-paraphernalia conviction will normally list the drug at issue . . . and most of Pennsylvania's drugs are on the federal list."). Also, the waiver under 8 U.S.C. § 1182(h) does not apply to him because a waiver under that section is available only when the offense involved relates to "simple possession of 30 grams or less of marijuana." 8 U.S.C. § 1182(h).

For these reasons and because Grigolashvili's arguments are otherwise without merit, we will deny the petition for review.