[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-16613

_____

BIA No. A96-114-075

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 24, 2006
THOMAS K. KAHN
CLERK

MOHAMMED ZEESHAN ZAFAR,

Petitioner,

versus

U. S. ATTORNEY GENERAL,

Respondent.

_____

No. 04-16689

_____

BIA No. A96-114-077

AMIRMOHAMMED HABIB LAKHANI,

Petitioner,

versus

U. S. ATTORNEY GENERAL,

Respondent.

_____

No. 04-16750

_____

BIA No. A96-114-175

NIZAR GHULAMANI,

Petitioner,

versus

U. S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of Decisions of the
Board of Immigration Appeals

_____

**(August 24, 2006)**

**ON PETITION FOR REHEARING**

Before ANDERSON, HULL and RONEY, Circuit Judges.

RONEY, Circuit Judge:

The panel grants the petition for panel rehearing, vacates its prior panel

opinion, published at 426 F.3d 1330 (11th Cir. 2005), and substitutes this opinion

in its place. While the Court reaches the same result, we address certain claims

more fully.

Petitioners are living in the United States on expired visas. Separate

2

removal proceedings were initiated against all three in March and April, 2003. Each moved for continuances while awaiting labor certifications from the Department of Labor ("DOL"). They filed petitions seeking review of the Board of Immigration Appeals' ("BIAs'") summary affirmances of the immigration judges' ("IJs'") denials of their motions to continue their removal proceedings. The government contends that this Court is without jurisdiction to hear this case pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii). We hold that we have jurisdiction under this statute to review the denials of motions to continue removal proceedings, but there was nonetheless no abuse of discretion in the IJs' decisions to do so. We thus deny the petitions.

Petitioners Amirmohammed Habib Lakhani, Mohammed Zeeshan Zafar, and Nizar Ghulamani are natives and citizens of Pakistan. The facts and procedural histories of their individualized cases are set forth below.

**Amirmohammed Habib Lakhani**

Lakhani entered the United States on or about July 9, 1995 as a nonimmigrant visitor authorized to remain in the country for no longer than six months, or until August 10, 1995. On March 27, 2001, Lakhani filed an application for labor certification. On April 14, 2003, the Department of Homeland Security ("DHS"), which in March 2003 replaced the Immigration and Naturalization Service ("INS"), initiated removal proceedings against Lakhani, charging him as a nonimmigrant who remained in the United States longer than

3

permitted pursuant to 8 U.S.C. § 1227(a)(1)(B). On July 16, 2003, Lakhani appeared in immigration court, where he admitted the factual allegations and conceded removability. Immigration Judge G. Mackenzie Rast, however, adjourned the matter until August 6, 2003 to ascertain what relief, if any, Lakhani would be seeking. At the August 6 hearing, Lakhani's counsel advised Judge Rast that Lakhani had a pending labor certification and requested that his removal be continued on that basis. Judge Rast denied that continuance ruling, "no statute [or] regulation [or] case authority . . . provides that it is appropriate for the Court to continue cases under such circumstances. Consequently the request for [a] continuance under such circumstances will . . . be denied." Judge Rast then ordered Lakhani removed from the United States. The BIA summarily affirmed Judge Rast's decision on November 30, 2004. Lakhani's petition seeks review of the BIA's November 30, 2004 order.

After the BIA affirmed Judge Rast's decision, Lakhani filed a motion for reconsideration with the BIA, attaching a copy of a one-page DHS form stating that the DHS was in receipt of an "I-140" filed on Lakhani's behalf. There is no reference to an approved labor certification in the form, and Lakhani did not submit to the BIA the actual "I-140." The BIA denied Lakhani's motion for reconsideration. Lakhani did not petition this Court for review of that denial. Accordingly, the possibility that Lakhani may have received approval of his labor certification at some point during the pendency of the matter before the BIA is a

4

fact which is not before this Court. Thus, Lakhani is in no different position before us than Zafar and Ghulamani.

## Mohammed Zeeshan Zafar

Zafar entered the United States on or about September 29, 2000, as a nonimmigrant visitor authorized to remain in the country for no longer than six months, or until March 29, 2001. On April 27, 2001, Zafar's father filed an application for labor certification. On March 12, 2003, the DHS initiated removal proceedings against Zafar, charging him, like Lakhani, as a nonimmigrant who remained in the United States longer than permitted pursuant to 8 U.S.C. § 1227(a)(1)(B). On July 16, 2003, Zafar appeared before the same IJ (Judge Rast) as Lakhani. Zafar also admitted the factual allegations and conceded removability. Similarly, Judge Rast adjourned the matter until August 6, 2003. At that August 6 hearing, Zafar's counsel advised Judge Rast that Zafar's father was in removal proceedings and had a pending labor certification. Counsel requested that Zafar's case be consolidated with his father's case. Zafar argued that because he was then under the age of twenty-one, he might qualify as a derivative beneficiary of his father's employment-based visa petition if it was ultimately approved. As such, Zafar moved the immigration court for a continuance until the disposition of his father's labor certification. Judge Rast found that there was

> no case authority or statutory [or] regulatory authority
> which authorizes or suggests the appropriateness of a
> continuance where labor certification has not yet been

5

> approved by the labor authorities. In this particular case, the situation is twice removed from that process. Under the circumstances, the Court does not view it as appropriate that the matter be continued for such purposes.

Judge Rast then ordered Zafar removed from the United States to Pakistan. Zafar appealed that decision to the BIA, which summarily affirmed the IJ's decision.

## Nizar Ghulamani

Ghulamani entered the United States as a nonimmigrant visitor on June 7, 1997, with a visa authorizing him to stay in the country for no longer than six months, or until approximately December 7, 1997. On April 30, 2001, Ghulamani filed an application for labor certification. On March 21, 2003, the DHS initiated removal proceedings pursuant to § 1227(a)(1)(B). On January 8, 2004, Ghulamani appeared before Immigration Judge Paul L. Johnston and also conceded removability. His counsel advised Judge Johnston that he had a pending labor certification and requested that his removal proceeding be continued on that basis as well. In a written decision, which was drafted and dated months prior to that hearing on September 25, 2003, the IJ denied Ghulamani's request for a continuance, finding, after oral arguments on the motion, that there was not the requisite good cause for continuance as provided in 8 C.F.R. § 1003.29. Judge Johnston found that the approval of a pending labor certification was "speculative" and did not constitute good cause for continuance, stating as follows:

> In the court's opinion aliens who are awaiting the [DOL] to

approve a labor certification are in a much weaker position than those who have an approved labor certification and are awaiting adjudication of an I-140. That is[,] their relief is even more speculative.

. . . [A] respondent who is awaiting a labor certification from the [DOL] . . . [is] not entitled to a continuance. . . . [G]ood cause for a continuance has not been demonstrated and in the exercise of discretion a continuance is not warranted.

The BIA affirmed the IJ's decision without opinion.

## **Jurisdiction to Review Denial of Motions to Continue Removal Proceedings**

The government contends that this Court lacks jurisdiction to review these petitions, which challenge the IJs' decisions to not continue the petitioners' removal proceedings. It directs us to the plain language of INA § 242(a)(2)(B)(ii), 8 U.S.C. § 1252(a)(2)(B)(ii) (2000), which states in relevant part, "Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General." That is, it contends that because the granting of continuances are discretionary, this "door closing" statute strips this Court of jurisdiction to review them.

Petitioners contend, however, that an IJ's authority to grant a continuance is not directly found "under this subchapter," which is "SUBCHAPTER II" of chapter 12, Title 8, entitled "Aliens and Nationality," but instead is found in 8 C.F.R. § 1003.29, a federal regulation implemented by the Attorney General. Therefore,

7

they argue, § 1252(a)(2)(B)(ii) does not prevent this Court from having jurisdiction to review their petitions.

We have jurisdiction to review an IJ's decision to deny a motion to continue a removal hearing. Section 1252(a)(2)(B)(ii) precludes our review of discretionary decisions of the Attorney General in *only* the specific circumstances where the "decision or action of the Attorney General the authority for which is *specified under this subchapter* to be in the discretion of the Attorney General . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis supplied). The express authority of an IJ to grant or deny a motion to continue a hearing is *not* found under the particular "subchapter" where § 1252(a)(2)(B)(ii) is contained, which is "SUBCHAPTER II" of chapter 12, Title 8, entitled "Aliens and Nationality." *See generally* 8 U.S.C., ch. 12 (entitled, "Immigration and Nationality"). Instead, the authority of an IJ to grant a motion for continuance is derived solely from regulations promulgated by the INS. *See* 8 C.F.R. § 1003.29 (stating that "[t]he Immigration Judge may grant a motion for continuance for good cause shown").

The phrase "specified under this subchapter" refers to subchapter II of Chapter 12, 8 U.S.C. §§ 1151-1378. *See Yerkovich v. Ashcroft*, 381 F.3d 990, 992 (10th Cir. 2004). Congress has precisely carved-out the statutorily-provided discretionary powers of the Attorney General within 8 U.S.C. sections 1151 through 1378 and, in turn, has expressly prohibited "any court" from reviewing them. There are myriad Congressionally-defined, discretionary *statutory* powers

8

of the Attorney General articulated within sections 1151 through 1378. For example, the "Attorney General in his discretion" may waive particular visa or passport requirements. *See, e.g.,* 8 U.S.C. § 1184(d) (2000) (noting that the "Attorney General *in his discretion* may waive the requirement that the parties have previously met in person") (emphasis supplied); 8 U.S.C. § 1181(b) (2000) (noting that the "Attorney General *in his discretion*" may readmit individual "without being required to obtain a passport . . .") (emphasis supplied). The Attorney General also "may authorize immigration officers" to record, among other things, the names, age and sex of "every resident person leaving the United States by way of the Canadian or Mexican borders for permanent residence in a foreign country." 8 U.S.C. § 1221(c). Although not before us, these discretionary decisions—statutory authority for which Congress "specified under" subchapter II—of the Attorney General would presumably not be reviewable by "any court" under the jurisdictional-stripping provisions of § 1252(a)(2)(B)(ii).

The discretionary decisions exercised here by the IJs to not continue the removal hearings were not "specified" under subchapter II of chapter 12, title 8, by Congress. The government does not cite, nor have we identified, any expressed authority stating the IJ's authority to continue a removal proceeding is "specified under" subchapter II. Instead, the parties seem to be in agreement that this "discretion" is administratively-determined and proscribed to the IJs via 8 C.F.R. § 1003.29, a federal regulation implemented by the Attorney General. Since only the

particular discretionary authorities of the Attorney General expressly "specified" in sections 1151 through 1378 are barred from our review under § 1252(a)(2)(B)(ii), and the discretionary authority to grant or deny a continuance in removal proceedings is not expressly contained within sections 1151 through 1378, we have jurisdiction to review those discretionary decisions. *See Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005) (finding jurisdiction under § 1252(a)(2)(B)(ii) to review denial of BIA's discretionary motion to reopen because the BIA had not exercised any statutorily provided discretion under the subchapter of title 8 governing immigration proceedings, but instead had exercised discretion as "delineated" by a regulation of the Attorney General); *Medina-Morales v. Ashcroft*, 371 F.3d 520, 528-29 (9th Cir. 2004) (same); *see also Subhan v. Ashcroft*, 383 F.3d 591, 595 (7th Cir. 2004) (finding jurisdiction to review denial of motion to continue removal proceedings under § 1252(a)(2)(B), but also finding an abuse of discretion in denying continuance); *but see Yerkovich v. Ashcroft*, 381 F.3d 990, 995 (10th Cir. 2004) (dismissing petition, and holding that "8 U.S.C. § 1252(a)(2)(B)(ii) bars review of the IJ's discretionary decision denying petitioner's motion for a continuance"); *Onyinkwa v. Ashcroft*, 376 F.3d 797, 799 (8th Cir. 2004) (same); *Koenig v. INS*, 64 Fed. Appx. 996, 998 (6th Cir. 2003) (unpublished) (holding that "this court lacks jurisdiction to review what was a purely discretionary decision of the immigration judge").

Our decision is further supported by the "strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 298 (2001). Because denials of motions to continue are not statutorily-proscribed discretionary acts "specified under this subchapter" to the Attorney General, as enumerated in § 1252(a)(2)(B)(ii), we have jurisdiction to review them.

## The IJs Did Not Abuse Their Discretion

Although we have jurisdiction under § 1252(a)(2)(B)(ii), the IJs nonetheless did not abuse their discretion by denying petitioners' motions for continuances to await decisions on their pending requests for labor certifications from the DOL. The grant of a continuance is within the IJs' broad discretion. *See Olvera v. INS*, 504 F.2d 1372, 1374 (5th Cir. 1974); *see also Witter v. INS*, 113 F.3d 549, 555 (5th Cir. 1997) ("The grant of a continuance of a deportation hearing lies within the sound discretion of the immigration judge, who may grant a continuance upon a showing of good cause.").

As noted above, all three petitioners are illegal aliens removable for overstaying their six-month visas. Lakhani's visa expired in August 1995; Ghulamani's visa expired in December 1997; Zafar's visa expired in March 2001. Two petitioners were ordered removed in 2003, and one in 2004. Petitioners do not contest their removability. Rather, petitioners contend that the IJs abused their discretion in denying continuances of the removal hearings. Petitioners represented

11

to the IJs that they had filed applications for labor certifications with the DOL and that if those applications were granted, petitioners would later be able to pursue I-140 petitions for employment-based immigrant visas and to file I-485 applications for adjustment of status by the Attorney General with the DHS. We say "pursue" I-140 petitions because it is the alien's prospective employer who must actually sign and file an I-140 petition for an employment-based visa. *See* 8 C.F.R. § 204.5(c).

In any event, petitioners do not dispute that at the time of their removal hearings, no I-140 petitions for employment-based visas had been filed on their behalf, and they had not filed any I-485 applications for adjustment of status under § 1255(i). Petitioners merely had pending labor certificate applications with the DOL.

We first review 8 U.S.C. § 1255, which codifies INA § 245, and then address the IJs' continuance denials.

## 8 U.S.C. § 1255

To be eligible for adjustment of status under 8 U.S.C. § 1255, there are three statutory eligibility requirements. Specifically, § 1255(a) provides that the status of an alien lawfully admitted into the United States may be adjusted to that of an alien lawfully admitted for permanent residence if: "(1) the alien makes an application for such adjustment, (2) the alien is *eligible to receive an immigrant visa* and is admissible to the United States for permanent residence, *and* (3) *an immigrant visa*

12

*is immediately available* to him at the time his application is filed." 8 U.S.C. § 1255(a) (emphasis supplied).

However, § 1255(c) bars aliens lawfully admitted into the United States from applying for § 1255(a) adjustment of status if they overstayed their visas. In other words, if an alien was lawfully admitted but overstayed his visa and became illegal, then the alien may not even apply for adjustment of status under § 1255(a), and cannot meet the first statutory eligibility requirement.

In turn, § 1255(i) creates an exception to § 1255(c)'s bar. Section 1255(i) states that "[n]otwithstanding the provisions of [§ 1255](a) and (c)," an alien "*may apply to the Attorney General for . . . adjustment of . . . status*" if: (1) the alien pays the applicable fees and the alien is physically present in the United States at the time the alien applies for adjustment of status; (2) the alien was physically present in the United States on December 21, 2000; and (3) the alien is the beneficiary of an application for a labor certificate that was filed on or before April 30, 2001. *See* 8 U.S.C. § 1255(i)(1)(A)-(C) (emphasis supplied). The original sunset date for applications for labor certificates under § 1255(i) was 1997, but it was extended several times, with April 30, 2001, being the final cutoff date.

Thus, aliens who were in the United States as of December 21, 2000, and applied for labor certificates on or before April 30, 2001, are excepted from the § 1255(c) bar and *may apply* to the Attorney General for adjustment of status under §

13

1255(i).  As noted earlier, Zafar's father and petitioners Ghulamani and Lakhani each had a labor certificate application filed on or before April 30, 2001.  Meeting these criteria, however, removes only the § 1255(c) bar to filing an adjustment-of-status application.  The mere filing of a labor certificate application with the DOL does not make an alien *eligible* for adjustment of status under § 1255(i).  Rather, there are two additional and more difficult *statutory eligibility requirements* in § 1255(i) that must also be met.

Specifically, § 1255(i)(2) provides, just as § 1255(a) does, that the Attorney General *may* approve an adjustment-of-status application only *if*:

> (A) the alien is *eligible to receive an immigrant visa* and is admissible to the United States for permanent residence; *and*

> (B) *an immigrant visa is immediately available* to the alien at the time the [adjustment-of-status] application is filed.

8 U.S.C. § 1255(i)(2)(A) and (B) (emphasis supplied).  Thus, the two statutory *eligibility* requirements for adjustment of status first set forth in § 1255(a) are not waived in § 1255(i), but are repeated verbatim in § 1255(i).  Accordingly, to be eligible for adjustment of status under § 1255(i), (1) the alien must be *eligible to receive an immigrant visa* and (2) an *immigrant visa must be immediately available*. *Id.*

At the time of their removal hearings in 2003, petitioners were not statutorily eligible for adjustment of status and had not even filed applications for adjustment-

of-status relief under § 1255(i). First, petitioners were not "eligible to receive an immigrant visa" as required under § 1255(i)(2)(A). The only visa at issue is an employment-based immigrant visa. *See* 8 U.S.C. § 1182(a)(5)(A); 20 C.F.R. § 656.2; 8 C.F.R. § 204.5. The I-140 petition for an employment-based immigrant visa must be accompanied by an *approved* labor certificate and other required supporting documents. *See* 8 C.F.R. §§ 204.5(a)(2)-(3). An employment-based immigrant visa cannot be applied for until the alien has an approved labor certification from the DOL. 8 U.S.C. §§ 1153(b)(3)(C), 1182(a)(5)(A).

Accordingly, at the time of their removal hearings, petitioners were not "eligible to receive an immigrant visa," *as required by § 1255(i)(2)(A)*, because they did not have approved labor certificates from the DOL. There was also no evidence in the immigration court that there was a visa "immediately available," *as required by § 1255(i)(2)(B)*. *See* 8 C.F.R. § 245.1(g). Therefore, at the time of their removal hearings, petitioners were nowhere close to meeting *these two statutory eligibility* requirements of § 1255(i) for adjustment of status to permanent residence. At the time of their hearings, petitioners could not even ask for, much less receive, adjustment-of-status relief under § 1255(i).

All petitioners offered the IJs was the speculative possibility that at some point in the future they might have received (or in Zafar's case, that his father might have received) approved labor certifications from the DOL, and only then could the

15

required I-140 visa petitions be filed, and only then would petitioners be able to file the I-485 applications for adjustment of status with the DHS and ask for adjustment-of-status relief. Given that petitioners had filed only labor certificate applications with the DOL, were not yet statutorily eligible for adjustment of status under § 1255(i), and had not filed I-485 applications for adjustment-of-status relief under § 1255(i), it clearly was not an abuse of discretion for the IJs to deny the motions for continuances of the removal proceedings.

## The Fifth and Third Circuits

Both the Fifth and Third Circuits followed the result reached in our prior *Zafar* panel opinion—the result we reach again today. *See Ahmed v. Gonzales*, 447 F.3d 433 (5th Cir. 2006); *Khan v. U.S. Att'y Gen.*, 448 F.3d 226 (3d Cir. 2006). These circuits, as we do today, emphasized (1) the discretionary nature of the process and (2) how aliens who have filed only labor certificate applications are not even statutorily eligible for adjustment of status under § 1255(i).

For example, in *Ahmed*, the alien had filed only a labor certificate application with the DOL and was denied a continuance of his removal proceedings. *Ahmed*, 447 F.3d at 435. The *Ahmed* court reasoned that the petitioner there was only at "the first step of a long and discretionary process," and that Ahmed was not statutorily eligible for adjustment relief. Under those circumstances, the court declined to hold that the denial of a continuance was an abuse of discretion.

16

In the Third Circuit's *Khan*, the petitioner also had filed only a labor certificate application with the DOL, and its analysis likewise supports our conclusion today. *Khan*, 448 F.3d at 229. The Third Circuit pointed out that the requisite I-140 visa petition had not been filed in Khan's name because the labor certificate application was still pending with the DOL. *Id.* at 234. Thus, the Third Circuit noted that "Khan [was] presently *ineligible for an immigrant visa*, which is a prerequisite to adjustment of status under § 1255(i)," and as such, he had not presented a prima facie case of eligibility for an adjustment of status. *Id.* at 235 (emphasis supplied). The court also noted that Khan could not satisfy the "immediately available" visa requirement of § 1255(i)(2)(B). As with the petitioners in *Ahmed* and our case, Khan offered only a speculative possibility that at some point in the future, his wife may receive a labor certification. *Id.* at 235.

As noted in our original *Zafar* opinion, all petitioners here offered the IJs was the speculative possibility that at some undeterminable point in the future they might receive approved labor certificates, but at the time of their removal hearings, they were not even statutorily eligible for either I-140 immigrant visas or an adjustment of status under § 1255(i). Thus, under the particular factual circumstances of petitioners' cases, we conclude that the IJs did not abuse their discretion in denying the continuance motions.

17

## Petitioners' Arguments

Petitioners acknowledge that the DOL process and the DHS adjustment-of-status process to permanent resident are long and discretionary at every step. Nonetheless, petitioners argue that (1) once an alien files his labor certificate application with the DOL, the alien, although otherwise removable, is entitled to stay in the United States, and cannot be removed by the DHS, and (2) it is thus an abuse of discretion to deny continuances of removal proceedings until the entire process is completed.

We disagree for several reasons. First, there is no provision in § 1255(i) or elsewhere in § 1255 that states a removable alien is permitted to stay in the United States upon the mere filing of a labor certificate application *with the DOL* or during this process. Indeed, petitioners here had not yet begun the DHS process as no I-140 visa petitions or I-485 adjustment applications were filed *with the DHS*. Indeed, § 1255(i) does not expressly address separate removal proceedings, and it certainly does not say a removable alien may remain in the United States during the DOL process.

Petitioners reference an April 27, 2001 memorandum by the INS Executive Associate Commissioner discussing prosecutorial discretion in removal proceedings and stating that field offices should not initiate removal proceedings "if such action is *based solely* on the filing of . . . a[] . . . labor certification application . . . ." INS

18

Memorandum of Apr. 27, 2001 at 2 (emphasis supplied). The INS Memorandum

further provides that "unauthorized aliens encountered in the course of routine

enforcement actions, or who otherwise come to the attention of the INS other than

by reason of the fact they are seeking to legalize their status under section 245(i),

should continue to be processed according to established procedures, whether or not

they are seeking to adjust their status under section 245(i)." *Id*.[1]

The INS Memorandum provides no support for petitioners, however,

because, as we have demonstrated above, these petitioners were not yet eligible for

an immigrant visa or for adjustment of status under § 1255(i). The INS

Memorandum indicates its intention to apply only to aliens who are "eligible for

adjustment under § 245(i)." For example, in the second sentence of the first

paragraph of the actual "Guidance," the INS Memorandum instructs field offices

not to initiate removal proceedings against "an alien who is eligible for adjustment

under § 245(i) . . ." if such action is based solely on the filing of a labor certification

application. This contemplation of eligibility is repeated throughout the Guidance.

Thus, whatever protection the INS Memorandum might otherwise provide, it

provides none to these petitioners who are not yet eligible under § 1255(i). In any

event, we do not rely on the INS Memorandum for our holding, because INS

_____

[1]We need not examine whether petitioners were encountered in the course of routine enforcement or otherwise because, as explained above, they were not statutorily eligible for adjustment of status under § 1255(i).

19

internal memoranda, such as this one, are "for the convenience of the INS and do [does] not have the force and effect of law." *Pasquini v. Morris*, 700 F.2d 658, 659 (11th Cir. 1983).

Petitioners also rely on *Bull v. INS*, 790 F.2d 869 (11th Cir. 1986), but it does not help them. In *Bull*, this Court concluded that it was an abuse of discretion for an IJ to deny a petitioner's request to continue his removal proceedings, where the petitioner was already married to a United States citizen and *had already filed a family-based visa petition with the INS. Bull*, 790 F.2d at 869. Here, at the time of the removal hearings before the IJs, petitioners had filed only labor certificate applications with the DOL, and no employment-based visa petitions were filed with the DHS. Petitioners here were thus not in the favorable posture of the *Bull* petitioner who already had filed a visa petition *with the INS* and was awaiting INS adjudication.

The *Bull* Court also found that because the INS had an *express policy* of allowing a *prima facie* qualified beneficiary of a family-based visa petition *to remain in the United States pending final adjudication of the visa petition and adjustment of status*, the IJ abused his discretion by refusing to grant a continuance for that purpose. *Id.* at 871-72. Here, by contrast, petitioners were not prima facie eligible for I-140 employment-based visa petitions because they did not have approved labor certificates. *Bull* is therefore distinguishable. If anything, *Bull*

20

suggests the IJs did not abuse their discretion here in denying continuances to petitioners who had not received approval of their applications for labor certifications and had not filed I-140 visa petitions.

As an alternative argument, petitioners suggest that the IJs erroneously believed that they had no authority to grant continuances and that this mistake of law was an abuse of discretion. We disagree with petitioners' reading of the record. For example, in Ghulamani's case, Judge Johnston exercised his discretion, stating:

> In the court's opinion aliens who are awaiting the [DOL] to approve a labor certification are in a much weaker position than those who have an approved labor certification and are awaiting adjudication of an I-140. That is[,] their relief is even more speculative.
>
> . . . [A] respondent who is awaiting a labor certification from the [DOL] . . . [is] not entitled to a continuance. . . . [G]ood cause for a continuance has not been demonstrated and in the exercise of discretion a continuance is not warranted.

Judge Johnston's observation that the approval of a labor certification was "speculative" was correct.

Similarly, in Zafar's case, Judge Rast also exercised his discretion, stating:

> The Court is aware of no case authority or statutory [or] regulatory law which authorizes or suggests the appropriateness of a continuance where a labor certification has not yet been approved by the labor authorities. In this particular case, the situation is twice removed from that process. Under the circumstances the Court does not view it as *appropriate* that the matter be continued for such purposes.

(emphasis supplied). Contrary to petitioners' arguments, we do not believe this

21

statement leads to the conclusion that Judge Rast thought he had no authority to continue removal proceedings and, in essence, no authority to manage his own trial docket. Instead, we conclude that Judge Rast was reasoning that he did not believe that any authority existed *requiring* him to grant a continuance based upon the mere pendency of a labor certificate application that had not yet been approved. Accordingly, he was free to, and did in fact, exercise his discretion and found it not appropriate to grant a continuance "under the circumstances." It is difficult to believe that any trial judge would believe that he does not have the authority to manage his docket and grant a continuance in a case before him. At a minimum, this record does not compel that conclusion. Simply put, the continuance denials were not an abuse of discretion.

Finally, petitioners suggest that we follow the Seventh Circuit's decision in *Subhan*, which reversed an IJ's denial of a continuance where a labor certificate application was pending at the time of the removal hearing. The Seventh Circuit found the IJ gave no reason for the denial, and instead merely stated the obvious: that the labor department had not acted yet. *Subhan*, 383 F.3d at 593. Because the IJ gave no reason for the denial, it was erroneous. *Id.* at 595. Had the IJ given almost any reason for the denial of *Subhan*'s request, the denial would have satisfied the law. *Id.* at 593-94.

The Seventh Circuit gave examples of many reasons that would have

sufficed, such as: "he should have filed his application for adjustment of status before his tourist visa expired" or "even that an illegal alien should not be allowed to delay his removal beyond a year." *Id.* We conclude that, given the speculative nature of the process, the IJs gave an acceptable reason here: it was not appropriate for removal proceedings to be indefinitely delayed to await the outcome of pending labor certificate applications with the DOL. Certainly the plain language of § 1255(i) does not bar or stay removal *by the DHS* upon the mere filing of a labor certificate application *with the DOL*.

For all of the foregoing reasons and based on this record, the IJs did not abuse their discretion in denying petitioners' continuance motions. Furthermore, we need not, and thus do not, reach the issue of what should happen on any other facts, such as, for example, if aliens have approved labor certificates and are statutorily eligible for adjustment of status under § 1255(i).

## No Due Process or Equal Protection Violations

Even if we did not have jurisdiction, we would still have jurisdiction to review substantial constitutional claims. *See Moore v. Ashcroft*, 251 F.3d 919, 923-24 (11th Cir. 2001). Petitioners assert violations of both their due process and equal protection rights.

Petitioners argue that their due process rights were violated when the IJs did not continue their removal proceedings long enough for them to meet all the

23

necessary requirements for adjustment of status. There is no constitutionally protected right to discretionary relief, which is the relief requested here. *See Tefel v. Reno*, 180 F.3d 1286, 1300 (11th Cir. 1999).

Petitioners' equal protection rights were not violated by being required to be registered in the National Security Entry-Exit Registration System, which they argue precipitated them being placed in these *discretionary* removal proceedings by the Attorney General, where other non-Pakistani citizens were not so required to register. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489-92 (1999) (finding that the INS retains inherent prosecutorial discretion as to whether to bring removal proceedings). There is no support in the record for this argument. Petitioners neither cite, nor have we identified, any case supporting their second equal protection argument that "in other jurisdictions" IJs "routinely administratively close proceedings where the beneficiary has a pending section 245(i) labor certifications, however in Atlanta they did not." We reject this equal protection argument as well.

The petitions are therefore

**DENIED.**