[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 15, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-11222
Non-Argument Calendar

_____

Agency No. A73-704-009

PAULA VELASQUEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(December 15, 2008)**

Before TJOFLAT, BIRCH and PRYOR, Circuit Judges.

PER CURIAM:

Paula Velasquez petitions us for review of the Board of Immigration

Appeals' ("BIA") order affirming without opinion the Immigration Judge's ("IJ")

decision that Velasquez was removable under §§ 212(a)(6)(A)(i) and (C)(ii) of the

Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1182(a)(6)(A)(i) and (C)(i),

and the IJ's denial of her application for adjustment of status under INA § 245,

8 U.S.C. § 1255. Velasquez argues that the IJ erred in finding her removable as an

alien present without being admitted or paroled and as an alien who sought to

procure status adjustment by fraud or willful misrepresentation. Velasquez also

contends that the IJ incorrectly denied her application for status adjustment. We

discern no error in the IJ's determination that Velasquez was removable. After

review, we conclude that we do not have jurisdiction to entertain Velasquez's

second argument regarding the IJ's denial of her application for status adjustment.

Accordingly, the petition is DENIED in part and DISMISSED in part.

## I. BACKGROUND

The procedural history in this case is lengthy but germane to our present

inquiry. As such, we revisit it in some detail. Velasquez is a native and citizen of

Honduras. See Administrative Record ("AR") 81, 439. On 19 February 2004,

Immigration and Customs Enforcement ("ICE") issued Velasquez a Notice to

Appear ("NTA"), charging her as removable from the United States. Id. at 439.

ICE alleged that Velasquez committed fraud or misrepresented a material fact in

2

her previous application for adjustment of status, in which she claimed to have entered the United States lawfully as a visitor on 17 November 1991.[1] Id. at 439-40. According to ICE, immigration records "failed to reveal any record that [Velasquez] entered the United States legally." Id. at 440.

On 7 April 2004, Velasquez, through counsel, appeared before the IJ and contested ICE's allegation that she entered the United States unlawfully. In support of her position, Velasquez proffered several pages from her passport which purportedly showed that she was inspected and admitted into the United States on 17 November 1991. In addition, Velasquez indicated that her daughter recently had filed an I-130 alien petition on her behalf and that Velasquez would again be seeking an adjustment of status based on that I-130 petition.[2] The IJ continued the proceedings to allow the government to conduct a forensic analysis of Velasquez's passport.

Velasquez reasserted her request for adjustment of status before the IJ on 8 September 2004. The proceedings were again continued until 5 January 2005.

---

[1] "Adjustment of status" is a discretionary immigration benefit that affords qualifying aliens the opportunity to obtain lawful permanent resident status from within the United States. See 8 U.S.C. § 1255(a). Velasquez previously submitted a petition for adjustment of status on 15 November 2002. That petition was denied by the Department of Homeland Security ("DHS") because it was determined that Velasquez failed to lawfully enter the United States. See AR 265-67.

[2] An I-130 petition is a family-based visa petition. The record indicats that Velasquez's daughter had previously submitted an I-130 petition but that it had been denied for failure to appear. See id. at 268.

3

After failing to appear for the 5 January 2005 removal hearing, Velasquez eventually testified in support of her applications on 4 August 2005. At that point, the government presented her with several documents which she had previously filed with immigration authorities. The documents included four requests for Temporary Protected Status ("TPS") made between February 1999 and May 2002, three employment requests, and an asylum application. In each of the TPS requests, Velasquez indicated that she had entered the United States unlawfully in January 1990. See id. at 270, 274, 283, 285. Likewise, the three employment requests reflected Velasquez's unlawful entry into the United States in January 1990. See id. at 386-88. In response, Velasquez claimed that the TPS and employment requests were prepared by other people and that she was not aware of the information they contained when she signed them.

After another brief continuance, the government submitted Velasquez's previously withdrawn asylum application filed on 20 September 1994. In the application, Velasquez again indicated that she had entered the United States without inspection. Velasquez signed the asylum application, as she did with her four TPS requests, but this time after participating in an interview with an asylum officer in her native language.

In her defense, Velasquez relied on two documents: (1) a replacement I-94; and (2) her passport. An I-94 is a document denoting the arrival or departure of

4

aliens and is completed at the time of entry into the United States and returned to immigration officials at the time of departure. In March 2004, Velasquez requested a replacement I-94 claiming that she lost her original. Velasquez received a replacement I-94 which indicated that she had approval to enter the United States as a visitor between 21 January 1990 and 21 January 1991. Velasquez claimed that the I-94, coupled with her passport, sufficiently established that she entered the United States lawfully on 17 November 1991.

The government completed its forensic analysis of Velasquez's passport. The analysis concluded that the passport stamp from the Honduran authorities "ha[d] been altered." Id. at 311. In addition, examination of the alleged U.S. stamp on page 14 of the passport – bearing the date 17 November 1991 – "could not be definitively authenticated due to the poor quality of the stamp impressions." Id.

On 21 March 2006, the IJ issued a written decision addressing the charges of removability in the NTA and Velasquez's eligibility for status adjustment. The IJ concluded that Velasquez was removable under §§ 212(a)(6)(A)(i) and (C)(ii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1182(a)(6)(A)(i) and (C)(i), and that she was ineligible for adjustment of status under INA § 245, 8 U.S.C. § 1255. Velasquez appealed the decision to the BIA and contended that the IJ abused his discretion in ordering her removal and in denying her the right to

5

apply for status adjustment. The BIA affirmed the IJ's decision without opinion. Velasquez now petitions us for review of the BIA's order.

## II. DISCUSSION

Velasquez presents two arguments for our consideration. First, she challenges the IJ's findings that she was removable as an alien present without being admitted or paroled and as an alien who sought to procure status adjustment by fraud or willful misrepresentation. Second, Velasquez contends that the IJ erred in determining that she was ineligible for status adjustment. We address each argument in turn.

"Where the BIA expressly adopts the decision of the IJ as its own, we review the IJ's decision." De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1006 (11th Cir. 2008). We review legal issues de novo and factual findings under the highly deferential substantial evidence test and "affirm the decision of the [IJ] if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (quotation marks and citation omitted). "[F]indings of fact made by . . . the [IJ] may be reversed by this court only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). "We review our subject matter jurisdiction de

6

novo." Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam).

A. Removability

The INA provides that the following classes of inadmissible aliens are ineligible to receive visas and ineligible to be admitted into the United States:

> (6) Illegal entrants and immigration violators
>
>> (A) Aliens present without admission or parole
>>
>>> (i) In general
>>>
>>> An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.
>>
>> . . . .
>>
>> (C) Misrepresentation
>>
>>> (i) In general
>>>
>>> Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.

INA §§ 212(a)(6)(A)(i) and (C)(i), 8 U.S.C. §§ 1182(a)(6)(A)(i) and (C)(i). Where a respondent is charged as being present without being permitted or paroled, the government has the burden of establishing the alienage of the respondent. See 8

7

C.F.R. § 1240.8(c). "Once alienage has been established, unless the respondent demonstrates by clear and convincing evidence that . . . she is lawfully in the United States pursuant to a prior admission, the respondent must prove that . . . she is clearly and beyond a doubt entitled to be admitted to the United States and is not inadmissible as charged." Id. "In any removal proceeding . . . the burden of proof shall be upon [the alien] to show the time, place, and manner of [her] entry into the United States[.]" INA § 291, 8 U.S.C. § 1361.

In this case, substantial evidence supports the IJ's finding that Velasquez was removable under § 1182(a)(6)(A)(i) as an alien present without being admitted or paroled. Velasquez stated on four TPS applications, three applications for employment authorization, and an asylum application that she entered without inspection on 15 January 1990. See AR at 209, 270, 274, 283, 285, 386-88. She signed her asylum application only after discussing it – in her native language – with a U.S. immigration official. This undercuts any notion that Velasquez did not know what she was signing.

As previously discussed, Velasquez relies on two documents in her defense: (1) a replacement I-94; and (2) her passport. The I-94 indicates only that she had permission to enter the United States as a visitor from 21 January 1990 until 21 January 1991. See id. at 221. Meanwhile, her passport contains an admission stamp dated 17 November 1991. Id. at 303. However, a forensic analysis of the

8

stamp revealed that it "could not be definitively authenticated due to the poor quality of the stamp impressions[,]" whereas the same analysis indicated that two previous entry stamps were genuine. Id. at 311. Moreover, the analysis indicated that the passport contained an altered Honduran admission stamp dated November 1991. Id.

Velasquez also contends that the IJ erred in finding that she was removable under § 1182(a)(6)(C)(i) as an alien who sought to procure a visa, admission, or other benefit by fraud or willful misrepresentation. However, the record directly contradicts this argument. On eight separate immigration documents, Velasquez stated that she entered the United States without inspection on 15 January 1990. Velasquez then stated in her first application for status adjustment that she was admitted as a visitor on 17 November 1991. Moreover, Velasquez cites to nothing in the record or our circuit precedent to support her argument that her misrepresentations were not material and that she should not be held accountable for them because she did not understand English. Accordingly, we conclude that the IJ did not err in finding that Velasquez was removable as an alien who sought to procure status adjustment by fraud or willful misrepresentation.

B. Status Adjustment

The INA provides that:

9

The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the [AG], in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to [her] at the time [her] application is filed.

INA § 245(a), 8 U.S.C. § 1255(a). In addition, notwithstanding § 245(a), status adjustment is available for an alien physically present in the United States:

(A) who–

(i) entered the United States without inspection; or

(ii) is within one of the classes enumerated in subsection (c) of this section;

(B) who is the beneficiary . . . of–

(i) a petition for classification [under section 1154 of this title] that was filed with the Attorney General on or before April 30, 2001 . . . [and]

(C) who, in the case of a beneficiary of a petition for classification . . . described in subparagraph (B) that was filed after January 14, 1998, is physically present in the United States on [December 21, 2000][.]

INA § 245(i), 8 U.S.C. § 1255(i). "The [alien] shall have the burden of establishing that . . . she is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion." 8 C.F.R. 1240.8(d).

At the same time, however, the INA bars judicial review of the following discretionary decisions of the AG:

(i) any judgment regarding the granting of relief under section . . . 1255 of this title, or

(ii) any other decision or action of the [AG] or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the [AG] or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

INA § 242(a)(2)(B), 8 U.S.C. § 1252(a)(2)(B). This jurisdictional bar applies to "the statutorily-provided discretionary powers of the [AG] within 8 U.S.C. sections 1151 through 1378[.]" Zafar v. U.S. Att'y Gen., 461 F.3d 1357, 1361 (11th Cir. 2006). Nevertheless, this provision "does not preclude review of non-discretionary legal decisions that pertain to statutory eligibility for discretionary relief." Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003) (per curiam).

In this case, we lack jurisdiction to review the IJ's determination regarding Velasquez's eligibility for status adjustment. As we noted in Zafar, "Congress has precisely carved-out the statutorily-provided discretionary powers of the Attorney General within 8 U.S.C. sections 1151 through 1378 and, in turn, has expressly prohibited 'any court' from reviewing them." Zafar, 416 F.3d at 1361. It is clear that 8 U.S.C. § 1255 numbers amongst the catalogue of those statutorily-provided discretionary powers of the Attorney General insulated from judicial review.[3]

_____

[3] We have addressed this issue before in Brown v. U.S. Attorney General, 187 Fed. Appx. 934, 935 n.2 (11th Cir. 2006) (per curiam) (noting that "we lack jurisdiction to review . . .

11

Velasquez also raises a constitutional challenge as part of her argument that the IJ erred in finding her ineligible for status adjustment. She contends that the IJ violated her constitutional right to due process by denying her the right to apply for status adjustment, because she met her burden of showing that she was lawfully admitted to the United States. Although "we have stated that § 1252(a)(2)(B) allows review of substantial constitutional challenges to the INA[,]" we have also held that "[w]here a constitutional claim has no merit . . . we do not have jurisdiction." Gonzalez-Oropeza, 321 F.3d at 1333. Here, Velasquez, by invoking the phrase "due process," attempts to endow what is nothing more than a recitation of her first status adjustment argument with constitutional significance. We are not persuaded. Accordingly, we conclude that we lack jurisdiction to entertain Velasquez's constitutional challenge as well.[4]

## III. CONCLUSION

Velasquez petitions us for review of the Board of Immigration Appeals' ("BIA") order affirming without opinion the Immigration Judge's ("IJ") decision that Velasquez was removable and the IJ's denial of her application for adjustment of status. We conclude that the IJ did not err in determining that Velasquez was

---

the IJ's and BIA's factual and discretionary determinations denying . . . adjustment of status").

[4] We also note that we are stripped of jurisdiction because Velasquez failed to raise her due process claim before the BIA. See Amaya-Artunduaga, 463 F.3d at 1251.

removable. We do not have jurisdiction to entertain Velasquez's second argument regarding the IJ's denial of her application for status adjustment. Accordingly, the petition is DENIED in part and DISMISSED in part.