[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15387
Non-Argument Calendar
_____

Agency No. A209-842-067


KAPUR LAMA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 13, 2018)

Before NEWSOM, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

Kapur Lama, a native and citizen of Nepal, petitions for review of the Board of Immigration Appeals's order affirming the Immigration Judge's denial of his applications for asylum, withholding of removal under the Immigration and Nationality Act, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment.  Lama principally argues that the BIA erred in affirming the IJ's finding that he failed to show that the government of Nepal is unable or unwilling to protect him from persecution by the Maoist political faction because of his participation in the affairs of a rival party, the Nepal Congress Party.  Lama also argues that the IJ abused its discretion and denied him due process by refusing to continue his final hearing so that he could obtain a new attorney and documents to support his claims for relief.  We will address each contention in turn.

## I

We review only the BIA's decision, except to the extent that it expressly adopts the IJ's opinion.  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  To the extent the BIA adopts the reasoning of the IJ, we review the IJ's decision as well.  *Id.*  Here, because the BIA agreed with the IJ's reasoning, we review the decisions of both the IJ and BIA.  *See id.*; *see also Mu Ying Wu v. U.S. Att'y Gen.*, 745 F.3d 1140, 1153 (11th Cir. 2014) ("We have found that the BIA

expressly adopted an IJ's decision where the BIA either agreed with the IJ's findings or relied on the IJ's reasoning ….").

We review factual determinations under the substantial-evidence standard, which requires us to "view the record evidence in the light most favorable" to the BIA's decision and to "draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (*en banc*).  To reverse a factual determination, we "must find that the record not only supports reversal, but compels it."  *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).   We do not re-weigh the evidence that was before the BIA. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1351 (11th Cir. 2009).  We must affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004) (internal quotation marks omitted).

## A

An alien who arrives in or is present in the United States may apply for asylum.  8 U.S.C. § 1158(a)(1).  The Attorney General or Secretary of the Department of Homeland Security has discretion to grant asylum if the alien meets the INA's definition of "refugee."  *Id.* § 1158(b)(1).  The INA defines "refugee" as:

> any person who is outside any country of such person's nationality . . .
> who is unable or unwilling to return to, and is unable or unwilling to

3

avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

*Id.* § 1101(a)(42)(A). The applicant bears the burden of proving statutory "refugee" status. 8 C.F.R. § 208.13(a); *Al Najjar*, 257 F.3d at 1284. "To establish asylum eligibility, the petitioner must, with specific and credible evidence, demonstrate (1) past persecution on account of a statutorily listed factor, or (2) a 'well-founded fear' that the statutorily listed factor will cause future persecution." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006).

An applicant for asylum who alleges persecution by a private actor must prove that his home country is unable or unwilling to protect him. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 950 (11th Cir. 2010). This is because "[t]he statutes governing asylum and withholding of removal protect … against persecution … by non-governmental groups that the government cannot control." *Ruiz*, 440 F.3d at 1257. While the failure to report persecution to local government authorities generally is fatal to an asylum claim, that failure may be excused where the petitioner convincingly demonstrates that those authorities would have been unable or unwilling to protect him and for that reason he could not rely on them. *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007).

To qualify for withholding of removal, a petitioner must establish that his "life or freedom would be threatened" in his country because of his "race, religion,

4

nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A); *see also Mendoza*, 327 F.3d at 1287.  The petitioner must show that it is more likely than not that he will be persecuted on account of a protected ground if returned to his home country.  *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013).  Where a petitioner fails to establish eligibility for asylum, he has necessarily failed to meet the higher standard for withholding of removal.  *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1177 (11th Cir. 2008).

"To establish eligibility for CAT relief, an applicant must show that it is more likely than not that he will be tortured by, or with the acquiescence of, government officials if returned to the designated country of removal."  *Todorovic v. U.S. Att'y Gen.*, 621 F.3d 1318, 1324 (11th Cir. 2010); *see also* 8 C.F.R. § 1208.16(c)(2).  We have affirmed the BIA's denial of a CAT claim where a petitioner had also failed to show that he had a well-founded fear of persecution sufficient to support an asylum claim.  *Al Najjar*, 257 F.3d at 1303.

## B

Substantial evidence supports the BIA's determination that Lama is not eligible for asylum because he did not "persuasively establish[] that the harm he suffered and fears in Nepal was inflicted by the government or by a non-governmental actor that the government is unable or unwilling to control."  Lama

5

himself testified that the Nepali government—in which his party (the Nepali Congress Party) currently holds a majority of the political power—has agreed to a power-sharing arrangement with the Maoist faction, and that he has never personally reported to Nepali authorities that the Maoists attacked him.  And while the 2016 Human Rights Report for Nepal concludes that the Maoists have committed crimes that went unpunished, most of those crimes appear to have been committed during a 10-year civil conflict that occurred between 1996 and 2006. Moreover, the report does not indicate that Maoist attacks on members of the Nepali Congress Party were common in the year covered by the report or that Maoists had recently committed any such attacks without prosecution by the government.  Finally, the report states that the Nepali police and security forces are controlled by the government, which is led by the Nepali Congress Party.

Lama's counterarguments are not persuasive, and in any event, cannot overcome the deference owed to the BIA's determination.  First, although Lama argues that the Nepali authorities took no action after his father reported that Lama had been "stabbed" by Maoists, the documentary evidence, including the 2016 Human Rights Report, does not show that the Nepali government is unwilling or unable to control the Maoists.  Nor did Lama's testimony indicate *why* the police did not follow up on the reported attack.  Second, although Lama contends that the 2016 Human Rights Report shows that the Nepali government has not prosecuted

6

Maoists for certain crimes, as explained above, those crimes occurred primarily between 1996 and 2006.  Finally, while Lama asserts that the 2016 report shows that Nepal experiences police corruption, the report also indicates that the police are controlled by the government, which is led by Lama's political party, the Nepali Congress Party.

In short, this Court does not re-weigh the evidence that was before the BIA, *Kazemzadeh*, 577 F.3d at 1351, and in any event, there is no evidence in the record that would compel this Court to reverse the BIA's determination that Lama has not shown that the Nepali government is unwilling or unable to prevent persecution by the Maoists.  *Id.* at 1351–52.

Next, because substantial evidence supports the BIA and IJ's findings that Lama had not shown that he was eligible for asylum, substantial evidence also supports the BIA and IJ's determinations that he could not carry his more stringent burden of showing that he was entitled to withholding of removal.  *Ruiz*, 440 F.3d at 1257.  And finally, because Lama sought CAT relief on the same basis as his asylum claim, substantial evidence also supports the BIA and IJ's findings that he had failed to meet his burden of showing that it is more likely than not that he would be tortured if he were returned to Nepal.  *Al Najjar*, 257 F.3d at 1303.

**II**

7

We typically review an IJ's denial of a motion for a continuance for an abuse of discretion. *See Zafar v. U.S. Att'y Gen.*, 461 F.3d 1357, 1362 (11th Cir. 2006). But we lack jurisdiction to consider a claim raised in a petition for review "unless the petitioner has exhausted his administrative remedies with respect thereto." *Amaya-Artundaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (citing 8 U.S.C. § 1252(d)(1)). In other words, if an alien fails to challenge an IJ's findings or rulings in his appeal to the BIA, we lack jurisdiction to consider a challenge on those grounds in his petition for review. *Id.*

Separately, although there is no Sixth Amendment right to counsel in removal proceedings, aliens do enjoy the right to effective assistance of counsel pursuant to the Fifth Amendment's Due Process Clause. *See Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999). Pursuant to agency regulations, an IJ must advise an alien of his right to counsel and the availability of free legal services, ascertain whether the alien desires counsel, and ensure that the alien has received a list of free legal service programs. 8 C.F.R. § 1240.10(a). To prevail on a due process challenge to a removal proceeding, an alien must demonstrate that the alleged misconduct resulted in "substantial prejudice." *Avila v. U.S. Att'y Gen.*, 560 F.3d 1281, 1285 (11th Cir. 2009). To establish substantial prejudice, the

petitioner must show that the alleged due process violation would have affected the outcome of the case. *Id.*[1]

As a preliminary matter, to the extent that Lama argues on appeal that the IJ abused its discretion—as opposed to violated his due process rights—when it denied him a continuance during his final merits hearing, we lack jurisdiction to consider that argument, and therefore must dismiss Lama's petition in that respect, because he did not assert that particular argument before the BIA. *Amaya-Artundaga*, 463 F.3d at 1250.

We do have jurisdiction to consider the issue that Lama actually exhausted before the BIA: whether the IJ violated his due process right to have an attorney present at his removal proceedings by refusing to grant him a continuance during his final merits hearing. *See id.* We conclude that the IJ did not violate Lama's due process rights when it refused to continue his case—for the sixth time—so that he could obtain *another* attorney after he fired his first one a few days before his final merits hearing. The IJ more than complied with the constitutional and regulatory requirements by repeatedly advising Lama that he had a right to obtain counsel and that free or reduced-cost legal services were available to him, and by granting Lama several continuances that allowed him to have approximately seven

---

[1] We review *de novo* constitutional due process claims. *Avila*, 560 F.3d at 1285.

months to obtain an attorney and the documents he felt were relevant to his claims for relief.  8 C.F.R. § 1240.10(a).

Furthermore, Lama has failed to carry his burden of demonstrating that his inability to obtain more documents and a new attorney substantially prejudiced him.  First, as explained above, the BIA determined that Lama was not eligible for relief because he did not show that the government of Nepal was unable or unwilling to protect him from persecution.  The documents that Lama claims he sought to obtain from his family in Nepal—his political membership card, hospital records, police reports, and documents related to his association with a voluntary social organization—have no bearing on that issue.  Second, Lama has failed to show how an attorney could have persuaded the IJ to conclude that he was eligible for asylum, especially in light of the 2016 Human Rights Report's lack of any indication that the Nepali government had recently allowed Maoists to attack other civilians with impunity.

**PETITION DENIED IN PART, AND DISMISSED IN PART.**

10