[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15544
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 10, 2008
THOMAS K. KAHN
CLERK

Agency No. A95-886-743

KELLY MOMPREMIER,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 10, 2008)

Before DUBINA and CARNES, Circuit Judges, and GOLDBERG,* Judge.

_____

*Honorable Richard W. Goldberg, United States Court of International
Trade Judge, sitting by designation.

PER CURIAM:

This is Kelly Mompremier's appeal from the Board of Immigration Appeals' judgment affirming the immigration judge's denial of his application for asylum, withholding of removal under the Immigration and Nationality Act, and relief under the Convention Against Torture, as well as from the BIA's denial of his motion to resubmit a late brief.

Kelly Mompremier, a Haitian native and citizen, arrived in the United States in February 2002. In July 2002, he filed an affirmative asylum application, which stated that he feared returning to Haiti because of an imputed political opinion, his membership in a social group, and a belief that pro-government supporters would try to beat, imprison, or kill him if he returned to Haiti. The asylum officer referred the matter to an immigration judge who denied Mompremier's application after conducting a hearing.

Mompremier appealed to the BIA. After the BIA issued a briefing schedule, Mompremier missed the filing deadline. He filed a motion to submit a late brief, asserting that his mailing address had changed and that the BIA mailed the briefing schedule to the wrong address even though he had submitted a change of address form. The BIA denied the motion and affirmed the immigration judge's

2

decision without opinion. Mompremier appeals.

# I.

## A.

Mompremier first contends that the BIA erred in affirming the immigration judge's denial of his request for asylum and withholding of removal.[1] He argues that he has established past persecution based on an imputed political opinion and should therefore have benefitted from the rebuttable presumption that he has a well-founded fear of future persecution. Further, he argues that the government failed to rebut that presumption because it did not show that conditions in Haiti have changed significantly or that Mompremier could reasonably relocate to another part of the country.

Because the BIA summarily affirmed the immigration judge's opinion, we review the immigration judge's opinion. See Antipova v. U.S. Att'y Gen., 392 F.3d 1259, 1264 (11th Cir. 2004). When considering a petition to review a final order, we review de novo legal issues, see Mohammed v. Ashcroft, 261 F.3d 1244, 1247 (11th Cir. 2001), but we review factual findings under the substantial

---

[1] Mompremier did not present any argument for CAT relief and thus he has abandoned that claim. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (holding that a party abandons an issue when it fails to offer any argument about that issue on appeal).

evidence test. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001). Under the substantial evidence test, we must affirm the decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1284. "To reverse a factual finding by the [immigration judge], [we] must find not only that the evidence supports a contrary conclusion, but that it compels one." Farquharson v. U.S. Att'y Gen., 246 F.3d 1317, 1320 (11th Cir. 2001). The fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

## B.

To be eligible for asylum, an applicant must prove that he is a "refugee" within the meaning of the Immigration and Nationality Act. 8 U.S.C. § 1158(b)(1)(A); see De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1006 (11th Cir. 2008). A refugee is defined as:

> any person who is outside any country of such person's nationality
> . . . and who is unable or unwilling to return to, and is unable or
> unwilling to avail himself or herself of the protection of, that country
> because of persecution or a well-founded fear of persecution on
> account of race, religion, nationality, membership in a particular
> social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).

4

An applicant can prove refugee status by presenting specific and credible evidence that (1) he suffered past persecution because of a protected ground; or that (2) he has a well-founded fear that if he returns, he will be persecuted because of a protected ground. Silva v. United States Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006). Persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." Sepulveda, 401 F.3d at 1231 (quotation marks omitted). "An imputed political opinion, whether correctly or incorrectly attributed, may constitute a ground for a well-founded fear of political persecution within the meaning of the INA." Al Najjar, 257 F.3d at 1287, 1289 (alteration and quotation marks omitted).

To establish asylum based on past persecution, the applicant must prove (1) that he was persecuted, and (2) that the persecution was on account of a protected ground. 8 C.F.R. § 208.13(b)(1). A showing of past persecution creates a rebuttable presumption of a well-founded fear of future persecution. Id.; see Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1232 (11th Cir. 2007) (internal citation omitted). The applicant's presumptively well-founded fear of future persecution may be rebutted by the government if the government shows, by a preponderance of the evidence, either: (1) that conditions in the country have changed, or (2) that the applicant could avoid future persecution by relocating

5

within the country if, "under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. § 208.13(b)(1)(i), (b)(2)(ii); De Santamaria, 525 F.3d at 1007.

## C.

We first address whether Mompremier established past persecution based on an imputed political opinion. As an initial matter, the parties do not dispute that the immigration judge did not make an explicit adverse credibility determination. Therefore, we must accept Mompremier's testimony as true. Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1255, n.2. (11th Cir. 2007). An alien's credible testimony may sustain the burden of proof if it is believable, consistent, and detailed. See Niftaliev v. U.S. Att'y Gen., 504 F.3d 1211, 1217 (11th Cir. 2007) (citing In re S-M-J, 21 I. & N. Dec. 722 (BIA 1997) (stating that an alien's own testimony "can suffice where the testimony is believable, consistent, and sufficiently detailed.")). However, the immigration judge found that Mompremier's testimony failed to meet this burden and that the evidence introduced did not remedy the deficiencies in his testimony. That finding is supported by substantial evidence.

6

At his hearing, Mompremier testified that his fear of returning to Haiti stemmed from the dominance of the "Lavalas" political party which had been in power when he left Haiti. He explained that even though he was not a political activist, the Lavalas were out to get him because "whenever they knew that you were not a supporter of the Lavalas [they thought] that you were against them." Mompremier also testified about specific instances of alleged mistreatment involving people he knew or presumed to be Lavalas supporters.

Mompremier testified that he believed Lavalas supporters killed his father while looking for Mompremier at his father's home. He offered his father's death certificate as corroborating evidence. The immigration judge determined, however, that there was "no clear evidence as to how the respondent knew that these individuals were from Lavalas or that they were looking for the respondent." Mompremier's assumption was not enough to persuade the immigration judge, and the death certificate did not remedy his deficient testimony. We have previously determined that the "weaker the applicant's testimony . . . the greater the need for corroborative evidence." Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). Here, however, the death certificate did not corroborate Mompremier's testimony about the circumstances surrounding the death of his father. The date, place, and declarer of death are all inconsistent with Mompremier's testimony, and

7

Mompremier admitted that with so many errors he did not know if the death certificate could be considered a valid document.

Several of Mompremier's other allegations also lacked sufficient detail or corroborative evidence. Mompremier testified that he was attacked by Lavalas supporters while attending a meeting of a student group that educated young people about democracy and promoted literacy. A mob of about fifteen people, one of whom Mompremier recognized as a Lavalas supporter, attacked the group with rocks and batons, accusing them of a conspiracy to boycott an upcoming election. Mompremier testified that he was hit in mouth with a rock, stabbed in the hand with a machete, and stabbed in the leg with a knife. The mob ransacked the school building where the meeting was held and set the meeting papers on fire. After the meeting, Mompremier stayed with his mom's friend for two days because he thought that the mob members knew where he lived, and he was scared to return home. There he received "natural treatments" for his injuries.

The immigration judge pointed out that Mompremier first testified that the student group met in the afternoons after school, but that he later testified that on the day of the attack the meeting was held in the morning. The immigration judge then looked to the evidence and noted that because of Mompremier's "natural treatments" he could submit no medical records to corroborate those injuries. He

8

considered a dental record that was submitted for treatment received in the United States, but pointed out that the record was "basically illegible," and did not show what treatment was received and did not indicate why the dental work was needed.

Mompremier also testified that he was arrested for participating in an attempted coup d'etat, but that he had in fact had not been involved. The immigration judge observed that Mompremier provided no explanation for why officials would think he had been involved, other than that he was not politically active in favor of the Lavalas. Additionally, he presented no evidence of his five day arrest or imprisonment. "[V]iew[ed] . . . in the light most favorable to the agency's decision and draw[ing] all reasonable inferences in favor of that decision," Adefemi, 386 F.3d at 1027, the lack of specificity in Mompremier's testimony in conjunction with the lack of corroborative evidence supports the immigration judge's findings. The record does not compel the conclusion that Mompremier suffered past persecution.

## D.

After determining that Mompremier did not establish past persecution, the immigration judge found that conditions in Haiti had changed and that Mompremier could reasonably relocate within Haiti. That finding is also

supported by substantial evidence.   The Country Reports on Human Rights Practices 2005 established and Mompremier testified that former president Aristide and Lavalas are no longer in power.  As the government points out, Mompremier feared that Lavalas, and not the government, would harm him if he returned to Haiti.  See Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1327 ("[W]here the alleged persecutors are not affiliated with the government, it is not unreasonable to require a refugee who has an internal resettlement alternative in his own country to pursue that option before seeking permanent resettlement in the United States, or at least establish that such an option is unavailable.").

Additionally, Mompremier was never politically active.  The AJDBB was a local literacy group comprised of five members, and that group no longer exists. The immigration judge did not see why Mompremier could not relocate to another area where "his limited involvement in this neighborhood literacy group would not have been known."  He further did not see why anyone would be interested in the fact that Mompremier may have been involved in boycotting an election over five years ago or somehow been involved in a failed coup in 2001.

Mompremier argues that even if conditions in Haiti have changed to negate the presumed well-founded fear of future persecution, Mompremier should still qualify for "humanitarian asylum" based of the severity of his past persecution,

particularly the murder of his father. Humanitarian asylum is afforded on a discretionary basis if the applicant has demonstrated "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution," 8 C.F.R. § 1208.13(b)(1)(iii)(A)–(B). The BIA has interpreted this form of relief to require an applicant first to show "severe harm" and "long-lasting effects." See In re N-M-A, 22 I & N Dec. 312, 326 (BIA 1998); see also Mazariegos, 241 F.3d at 1327 n.4 (11th Cir. 2001) (explaining that an agency's interpretation of its own regulations is entitled to "great deference," and that "[t]he degree of deference is especially great in the field of immigration").

However, as the immigration judge noted, Mompremier offered only "pure[] speculation" that his father had been murdered by Lavalas, he did not establish a connection between himself and the persecution his father personally suffered, and further the death certificate contradicted his testimony regarding the circumstances surrounding his father's death. Thus, based on the immigration judge's findings, Mompremier failed to show either extreme past persecution or compelling reasons why humanitarian asylum was warranted in this case. See 8 C.F.R. § 1208.13(a), (b)(1)(iii)(A)–(B).

Because Mompremier's claim for asylum fails, his claim for withholding of removal necessarily fails. The standard for asylum is less stringent than that for

withholding of removal.  See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005) (holding that a failure to establish a claim of asylum on the merits necessarily causes a claim for withholding of removal to fail).

## II.

Mompremier next contends that the BIA erred by refusing to consider his out-of-time brief.  We review the denial of a motion to consider an out-of-time brief for abuse of discretion.  8 C.F.R. § 1003.3(c)(1).  The BIA abuses its discretion by acting arbitrarily or capriciously.  Ali v. U.S. Att'y Gen., 443 F.3d 804, 808 (11th Cir. 2006).  The BIA did not abuse its discretion by refusing to consider the out-of-time brief because it mailed notice of the briefing schedule to Mompremier at the address of record, and there was no indication that the BIA received a change of address form.

Mompremier further contends that the BIA's refusal to consider his out-of-time brief violated his due process rights.  We review de novo constitutional challenges.  Lonyem v. U.S. Att'y Gen., 352 F.3d 1338, 1342 (11th Cir. 2003) "[T]here is no constitutionally protected right to discretionary relief."  See Zafar v. U.S. Att'y Gen., 461 F.3d 1357, 1367 (11th Cir. 2006), petition for rehearing en banc denied, 473 F.3d 1350 (11th Cir. 2007) (holding that immigration judges did

not violate aliens' due process rights by not continuing their removal proceedings long enough for them to meet all necessary requirements for adjustment of status). Additionally, to show a denial of due process, an alien must establish that the asserted error caused substantial prejudice. Mompremier argues that "[b]y failing to consider the Appellant's arguments, and dismissing the instant administrative appeal 'without opinion' the Appellant suffered prejudice." Despite this assertion, Mompremier has not presented any examples of prejudice resulting from the denial of his motion to submit an out-of-time brief. Additionally, we have previously held that "no entitlement to a full opinion by the BIA exists." Lonyem v. U.S. Att'y Gen., 352 F.3d at 1242.

**PETITION DENIED**.[2]

---

[2]This case was originally scheduled for oral argument, but on motion of petitioner's counsel and pursuant to 11th Cir.R.34-3(f) it has been decided on the briefs and record.